GARRETT, J.
**123 Defendant was charged with first-degree unlawful sexual penetration, ORS 163.411, for alleged crimes that he committed against a girl, SC, who belonged to the church that defendant led as pastor. Before trial, the state disclosed that it would call as witnesses SC and six other women who would testify to having been sexually abused by defendant years earlier when they were young girls attending his church. Defendant, who denied that any abuse had occurred, moved to preclude the testimony of the other six women. He also moved to prohibit the use of the word "victim" at trial to describe SC or the other accusers. The trial court denied both motions.
At trial, SC and the other six women testified to having been abused by defendant, and the prosecutor and some of the state's witnesses referred to SC and the other six women as defendant's "victims." Defendant was convicted and the Court of Appeals affirmed without opinion. We granted review to address two questions: whether the trial court erred in admitting the testimony of the six other women who described being abused by defendant, and whether the trial court erred in allowing SC and those other women to be described as "victims" by the prosecutor and state's witnesses.
As explained below, we conclude that the trial court did not err in denying defendant's pretrial motion to the extent that defendant sought to categorically prohibit the prosecutor from referring to SC as a "victim." We reach a different conclusion, however, regarding the use of that word by the state's witnesses. Under these circumstances, where the only evidence of abuse was the testimony of SC and the other women, and where defendant's theory of the case was that no abuse had occurred and that SC and the other women were either lying or mistaken, the use of the word "victim" by the state's witnesses amounted to impermissible vouching, and the trial court should have granted defendant's motion to preclude such references. Because we further conclude that the trial court's error in that regard was not harmless and requires remand, it is unnecessary to **124 resolve defendant's other arguments regarding the admission of "other acts" evidence.
BACKGROUND
The facts relevant to our review are undisputed. In the 1980s and 1990s, defendant was the pastor of a communal church that focused on "intense orthodox scholarship in the original languages of the Bible." The core members of the church lived in cooperative homes located near or next to each other. Over the years, tension grew within the community due to interpersonal conflicts involving defendant and other members. Beginning in approximately 1994, some of the members' children told their parents that defendant had sexually abused them. The members confronted defendant but did not report the allegations to law enforcement.
*586 In 1996, a group of members left the church. In 1997, one of the former members reported to police that defendant had sexually abused children in the congregation. Detective Sturdevant investigated. Some children told Sturdevant that defendant had sexually abused them when they were living in the cooperative homes. One child was SC, the complaining witness in this case, who was then around 10 or 11 years old; she told Sturdevant that defendant had touched her sexually but she did not say that he had penetrated her. Despite the children's allegations, some children and their parents did not want to press charges against defendant at that time. No charges were filed.
In 2013, some of the children who had reported sexual abuse in 1997-now women in their 20s and 30s-again reported to authorities that defendant had sexually abused them as children. Detective Helwig reopened the investigation. In total, Helwig learned of seven women, including SC, who alleged that defendant sexually abused them when they were girls living in the communal homes. Helwig interviewed SC, who reported for the first time that defendant had digitally penetrated her on multiple occasions between 1993 and 1996.
The Multnomah County district attorney filed charges against defendant but was limited in doing so by the statute of limitations. Specifically, charges arising from **125 the allegations by the six women other than SC were time-barred either because those women were over 30 years old or because they had not alleged any conduct by defendant that they had not disclosed in 1997. See former ORS 131.125(2) (2013), amended by Or. Laws 2015, ch. 417, § 1.[1] Because SC did allege something that she had not previously disclosed, however (the acts of digital penetration), charges based on those allegations were not time-barred. Accordingly, defendant was indicted on three counts of first-degree unlawful sexual penetration.
Defendant denied all wrongdoing. He asserted that the allegations against him were either lies or false memories motivated and fostered by ill-will flowing from the church's fracturing in 1996.
Before trial, the state disclosed that it would call as witnesses SC and the six other women who had alleged sexual abuse by defendant. Defendant filed pretrial motions seeking, as relevant here, two forms of relief. First, defendant sought to preclude the six women other than SC from testifying about prior acts of sexual abuse by defendant. Defendant argued that the women's testimony was inadmissible propensity evidence under OEC 404(3), which provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Second, defendant moved "for an order that all present, including all parties, witnesses, and staff shall be precluded from referring to the complainant, including but not limited to [SC] and any other alleged 'victim' of abuse, as a 'victim,' " arguing that such references would, under the circumstances of the case, undermine the presumption of defendant's innocence **126 and constitute improper vouching for the credibility of the accusers.
The state opposed both motions. With respect to defendant's argument under OEC 404(3), the state argued that the testimony of the six other women was admissible under the second sentence of that rule. See OEC 404(3) ("[Evidence of other crimes, wrongs or acts] may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."). The state also argued that the evidence was admissible *587 under OEC 404(4) ("evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by" other rules, statutes, or the state or federal constitutions).
The trial court ultimately denied defendant's motion as to the "other acts" evidence and allowed the women to testify; however, in doing so, the court did not specify whether it deemed the evidence admissible under OEC 404(3), OEC 404(4), or both.[2]
The state also opposed defendant's "vouching" argument and moved to require all parties and witnesses to refer to SC as the "victim" because she met the definition of that term under Article I, section 42, of the Oregon Constitution and ORS chapter 147 (each defining "victim" as "any person determined by the prosecuting attorney or the court to have suffered direct financial, psychological or physical harm as a result of" a crime). The trial court denied both defendant's and the state's motions.
At trial, SC and the six other accusers testified that defendant had sexually abused them on multiple occasions when they were girls living in the communal homes. The state also called as witnesses the two investigating detectives, Helwig and Sturdevant, as well as several former members of the church who had lived in the communal **127 homes during the time period of the alleged abuse. Both Helwig and Sturdevant repeatedly referred to SC and the other testifying accusers as "victims," and a former member of the church referred to SC as a "victim" multiple times during her trial testimony. The prosecutor referred to SC and the other women as "victims" numerous times throughout trial, including during the state's opening statement, case-in-chief, and closing argument. Defendant did not object to those descriptions during the trial. The state did not present any physical or eyewitness evidence corroborating the allegations of SC or the other accusers.
Defendant's theory at trial was that former church members had fabricated the allegations against him. He highlighted inconsistencies in the women's allegations and emphasized that most of the children, parents, and law enforcement knew of the allegations in 1997 yet decided not to press charges at that time.
After a 13-day trial, the jury convicted defendant of all three counts of first-degree unlawful sexual penetration.
Defendant appealed, challenging the trial court's denial of his motions to exclude the "other acts" evidence and to prohibit the use of the term "victim." The Court of Appeals affirmed without opinion, and defendant petitioned for review, which we granted.
DISCUSSION
Because it is dispositive, we begin with defendant's argument that the trial court erred in denying his motion regarding the use of the term "victim" at trial to describe SC and the other witnesses who testified that defendant abused them. Defendant contends that the repeated use of that term by the prosecutor and state's witnesses constituted impermissible "vouching" for the credibility of the accusers and undermined the presumption of defendant's innocence, depriving him of a fair trial in violation of the Fourteenth Amendment to the United States Constitution. As we will explain, defendant's arguments have partial merit, but the legal principles applicable to the use of the term "victim" by the state's witnesses are different than those that apply to the prosecutor. We begin by explaining the difference.
**128 "Vouching" refers to the expression of one's personal opinion about the credibility of a witness. See State v. Chandler , 360 Or. 323, 330-31, 380 P.3d 932 (2016). In Oregon, witnesses are categorically prohibited from giving vouching testimony. State v. Black , 364 Or. 579, 587, 437 P.3d 1121 (2019) ; State v. Middleton , 294 Or. 427, 438, 657 P.2d 1215 (1983). That principle is commonly *588 called the "vouching rule" and is a judicially created rule of evidence designed to "serve[ ] the policy goals of ensuring that the jury remains the sole arbiter of witness credibility and that the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony." Chandler , 360 Or. at 330-31, 331 n. 3, 380 P.3d 932 ; see also State v. Milbradt , 305 Or. 621, 629 n. 3, 756 P.2d 620 (1988) (jury's function is to evaluate witnesses based on each juror's collective experience); State v. Walgraeve , 243 Or. 328, 333, 413 P.2d 609 (1966) (denying rehearing) (same). The rule applies to both direct comments and other statements, whether made in or out of court, that are "tantamount" to comments on the veracity of other witnesses. Chandler , 360 Or. at 331, 380 P.3d 932. Whether a witness's statement constitutes impermissible vouching is a legal question. See Black , 364 Or. at 591, 437 P.3d 1121 (vouching rule categorically excludes witness vouching); State v. Jesse , 360 Or. 584, 599, 385 P.3d 1063 (2016) (where inquiry leads to single correct answer, we review the court's ruling for error of law).
Not all vouching takes the form of overt statements that a witness is trustworthy. Some vouching is subtler, and certain statements might be vouching in some contexts but not others. Accordingly, it is important to consider each statement in the context in which it was made. See, e.g. , State v. Lupoli , 348 Or. 346, 361-62, 234 P.3d 117 (2010) (witness's statement was inadmissible vouching in context even though it might have been admissible in a different context).
Lupoli illustrates the principle. In that case, a nurse testified at trial that a child had been sexually abused. We concluded that her testimony improperly vouched for the child's credibility when she explained, in support of her diagnosis, that the child's responses during a forensic interview were "developmentally appropriate for her age," had included "spontaneous and descriptive details," and were "pretty compelling." Id. at 362, 234 P.3d 117. We explained that, although **129 such statements might be admissible under other circumstances, "none of [the nurse's] testimony can be meaningfully separated from the context of which it was a part"-context in which there was no physical evidence of sexual abuse and in which the nurse's diagnosis "necessarily was based on her assessment of the child's believability." Id. ; see also State v. Keller , 315 Or. 273, 285, 844 P.2d 195 (1993) (doctor's statements that "[t]here was no evidence of leading or coaching or fantasizing" during child's interview and that the child was "obviously telling you about what happened to her body" amounted to testimony that the child was credible (brackets in Keller )); Milbradt , 305 Or. at 630, 756 P.2d 620 (witness's opinion "that a person is not deceptive, could not lie without being tripped up, and would not betray a friend" is "tantamount" to a direct comment on another witness's credibility).
At trial, lawyers are similarly prohibited from giving their personal opinions on the credibility of witnesses. See State v. Parker , 235 Or. 366, 377, 384 P.2d 986 (1963) ("It is improper for counsel to interject his personal appraisal of the witness's credibility in a way which would suggest to the jury that the appraisal is based upon counsel's own knowledge of facts not introduced into evidence."); see also State v. Charboneau , 323 Or. 38, 47, 913 P.2d 308 (1996) ; DR 7-106(C)(4) ("In appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not *** [a]ssert the lawyer's personal opinion *** as to the credibility of a witness."); ABA Standards for Criminal Justice , Standard 3-6.8(b) (4th ed. 2015) (same).
That principle is similar to the witness vouching rule discussed above except that, unlike the witness vouching rule, it is not a rule of evidence . The rationale for the principle is that counsel's credibility opinions are not evidence and are sometimes based on facts not in evidence-thus, they tend to distract the jury from its duty to base its verdict on the evidence at trial. See R.J. Frank Realty, Inc. v. Heuvel , 284 Or. 301, 306, 586 P.2d 1123 (1978) ("[C]ounsel's opinion is not based on evidence, and such statements are not condoned."). If counsel improperly discloses an opinion regarding a witness's credibility, the trial court has discretion in fashioning an appropriate remedy; but failure to craft an appropriate remedy is an abuse of **130 discretion if it causes the *589 defendant to be denied a fair trial. State v. Thompson , 328 Or. 248, 272, 971 P.2d 879, cert. den. , 527 U.S. 1042, 119 S.Ct. 2407, 144 L.Ed.2d 805 (1999) (trial court abuses discretion in denying motion to strike prosecutor's statement if defendant was denied fair trial in light of statement); State v. Smith , 310 Or. 1, 24, 791 P.2d 836 (1990) (trial court abuses discretion in denying mistrial only if defendant was denied fair trial in light of prosecutor's statement). Finally, as we will explain further below, although a prosecutor's comments regarding witness credibility may present problems similar to those underlying the evidentiary rule against "vouching" testimony, it is also true that prosecutors, as advocates for the state's cause, have wide latitude to make arguments from the evidence; that aspect of the prosecutor's role is a complicating factor in resolving defendant's arguments here.
We now turn to the parties' arguments. Defendant contends, in essence, that this case is like Lupoli . He argues that, where a defendant disputes the complaining witness's victimhood itself, and where there is no physical evidence corroborating an accuser's allegations, the use of the term "victim" to describe that witness reflects the speaker's belief that the accuser's claims are credible and the defendant's denial is not. In defendant's view, although calling accusing witnesses "victims" might not be vouching in every case-for instance, a case in which there is physical evidence of a crime (such that other witnesses may conclude that an accuser is a victim for reasons independent of the accuser's statements)-the term "victim" nevertheless amounts to vouching here. Defendant further argues that referring to the complaining witness as the "victim" throughout a trial where victimhood is disputed assumes defendant's guilt and thus compromises the presumption of defendant's innocence. See State v. Elliott , 234 Or. 522, 527, 383 P.2d 382 (1963) ("No citation of authority is necessary for the statement that in a criminal case in this jurisdiction a defendant is presumed to be innocent of the offense charged and every necessary element thereof until his guilt is established beyond a reasonable doubt.").
The state makes several arguments in response. First, the state argues that, insofar as the word "victim" was used by the prosecutor , it was not "vouching" at all, but **131 merely permissible advocacy. Second, the state argues that no use of the term "victim" (whether by the prosecutor or by witnesses) is problematic because that word, rather than implying a view about credibility or assuming defendant's guilt, simply denotes the legal designation conferred by Article I, section 42(6)(c) (defining "victim" as "any person determined by the prosecuting attorney or the court to have suffered direct financial, psychological or physical harm as a result of" a crime); accord ORS 147.500(13). Third, the state argues that defendant's requested relief was too broad. Even assuming that some uses of the term "victim" could be prejudicial, the state reasons, that is not true of all uses of that term under all circumstances; thus, defendant's motion seeking categorical prohibition demanded too much, and the trial court therefore did not err in denying it. The state suggests that defendant should have made particularized objections at trial, which he did not do.
We address the state's second argument first, because, if the state is correct that the use of the word "victim" is necessarily benign, that would end the analysis. But we disagree with the state's contention that, because SC indisputably was a "victim" for purposes of Article I, section 42, and ORS 147.500, the use of that term by the state's witnesses could not have presented a vouching problem. The legal status of "victim" carries specific procedural rights and protections as set forth in ORS chapter 147 and the Oregon Constitution, including, for instance, the right to be present at criminal trials of the accused, Or. Const., Art. I, § 42 (1)(a), and to bring claims alleging violations of constitutional rights, ORS 147.515. But that legal status in no way speaks to the relevant question for purposes of the vouching rule, which concerns the factual issue of whether SC was being truthful in claiming to be a victim of criminal conduct. The state's argument could have salience in a case where there is physical evidence corroborating the complaining witness's claims of victimhood, allowing another witness to conclude that the *590 complaining witness is a "victim" based on evidence other than the complaining witness's allegations. It is a different matter, however, where the defendant asserts that no crime occurred and where the only evidence of victimhood is the complaining witness's own testimony. In that situation, **132 another witness's description of the complaining witness as a "victim" conveys an opinion that the complaining witness is telling the truth. That is what the vouching rule is intended to prevent.
The state's contrary argument appears to presume that, even under those circumstances, the jury will understand that the word "victim" really means "alleged victim." It is possible that some jurors will have that understanding some of the time, but we decline to simply assume that that will always be so for all jurors, particularly when jurors are given no instruction regarding the term's legal meaning.
In short, we agree with defendant that, under our reasoning in Lupoli , the use of the term "victim" to refer to the complaining witness or other witnesses, in circumstances where the accusers' own testimony is the only evidence that the alleged criminal conduct occurred, conveys the speaker's belief that the accusers are credible. In reaching that conclusion, we join other courts that have considered the use of the word "victim" in analogous circumstances. See, e.g., State v. Albino , 130 Conn. App. 745, 766, 24 A.3d 602, 617 (2011) ("When there is no doubt that a homicide occurred and that the defendant was the person who caused it to occur, and the only question for the jury is whether the homicide was justified, * * * repeated reference to the 'victim,' * * * amounts to an opinion on the ultimate issue of the case."); State v. Nomura , 79 Haw. 413, 416, 903 P.2d 718, 721 (Haw. Ct. App. 1995) ("[T]he term 'victim' is conclusive in nature and connotes a predetermination that the person referred to had in fact been wronged."); State v. Devey , 138 P.3d 90, 95 (Utah Ct. App. 2006) ("[W]here a defendant claims that the charged crime did not actually occur, and the allegations against that defendant are based almost exclusively on the complaining witness's testimony-the trial court, the State, and all witnesses should be prohibited from referring to the complaining witness as 'the victim.' "); State v. Wigg , 2005 VT 91, 179 Vt. 65, 889 A.2d 233, 236 (2005) ("[W]here the commission of a crime is in dispute and the core issue is one of the complainant's credibility, it is error for a trial court to permit a police detective to refer to the complainant as the 'victim.' ").
**133 We also agree with defendant's contention that, where a defendant denies that any crime occurred, references to the complaining witness as a "victim" may undermine the presumption of defendant's innocence because it assumes defendant's guilt, a fact that is necessarily not proved until the jury finds the defendant guilty. ORS 136.415 ("A defendant in a criminal action is presumed to be innocent until the contrary is proved."); see also Jackson v. Virginia , 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (presumption of innocence embedded in Fourteenth Amendment). In some cases, undermining the presumption of innocence may deprive a defendant of a fair trial under the state and federal constitutions, as repetitious use of the term "victim" implicitly reinforces to the jury that defendant has harmed the accusers. Cf. Estelle v. Williams , 425 U.S. 501, 504-05, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (trying defendant in prison clothes undercuts presumption of innocence because defendant's appearance serves as a "constant reminder of the accused's condition" in a way that "may affect a juror's judgment," denying defendant a fair trial under the Fourteenth Amendment). This court has held that, except in extraordinary circumstances, defendants may not be tried inside prison facilities, before anonymous juries, or while wearing restraints, as those conditions imply that the defendant is dangerous, which undermines the presumption of innocence and prejudicially influences jurors in violation of a defendant's Article I, section 11, right to a fair jury. See, e.g. , State v. Sundberg , 349 Or. 608, 625, 247 P.3d 1213 (2011) (use of anonymous jury prejudices defendant by suggesting that he or she is dangerous and, by extension, guilty, undermining the presumption of innocence); State v. Cavan , 337 Or. 433, 448, 98 P.3d 381 (2004)
*591 (trying inmate in visitor center of correctional institution deprived setting of "aura of neutrality" that attends a public courthouse and implied "the overriding impression of a defendant's dangerousness and * * * by extension * * * his or her guilt"); State v. Farrar , 309 Or. 132, 156, 786 P.2d 161 (1990) (defendant ordinarily cannot be in restraints). Thus, just as it would be improper for defendant to be called a "criminal" or "guilty person" throughout trial, giving a complaining witness a title that assumes a defendant's guilt tends to undermine the principle that the state **134 has the burden to prove guilt beyond a reasonable doubt. Cf. State v. Thompson , 266 Conn. 440, 472, 832 A.2d 626 (2003) ("No defendant on trial for murder can be officially characterized as a murderer or as a cold-blooded killer, until he is adjudged guilty of murder or pleads guilty to that charge." (Internal quotation marks and brackets omitted.)).
However, our conclusions that the use of the term "victim" may constitute vouching and undercut the presumption of innocence do not necessarily answer the question whether the trial court here was required to grant defendant's pretrial motion to prohibit all uses of that term. We turn, then, to the state's other two arguments: first, that the prosecutor was entitled to use the term "victim" as part of legitimate advocacy, and, second, that in all events, defendant's requested relief was too broad.
As we will explain, we agree with the state in part. Earlier, when describing the vouching rule applicable to witnesses, we noted that counsel, too, are supposed to refrain from offering personal opinions on witness credibility. That rule has its origins in the basic principle that jurors should make their decisions based on the evidence. See, e.g. , Parker , 235 Or. at 377, 384 P.2d 986 ("It is improper for counsel to interject his personal appraisal of the witnesses' credibility in a way which would suggest to the jury that the appraisal is based upon counsel's own knowledge of facts not introduced into evidence."); Huber v. Miller , 41 Or. 103, 115, 68 P. 400 (1902) ("The jurors are triers of fact upon the evidence adduced * * * and they must exclude extraneous matters from consideration in arriving at their verdict[.]"). Thus, statements by attorneys at trial are generally required to be limited to the issues and evidence presented. Cler v. Providence Health System-Oregon , 349 Or. 481, 487-88, 245 P.3d 642 (2010) (counsel has " 'a large degree of freedom' " to comment on the admitted evidence at closing and may urge jury to draw any and all legitimate inferences from that evidence, but counsel may not make " 'statements of facts outside the range of evidence' " (quoting Huber 41 Or. at 115, 68 P. 400 )); Trial , 88 CJS 353 § 309 (2008) ("Counsel must be confined to the issues and the evidence, and will not be allowed to comment on or state facts not in evidence or within the issues."). Nor may counsel **135 make excessively inflammatory arguments that distract the jury from rendering a verdict based on the evidence. Cler , 349 Or. at 488 n. 5, 245 P.3d 642 (citing several cases adhering to that principle).
Notwithstanding those restrictions, a prosecutor is expected to be a "zealous advocate" for the public, see ABA Standards for Criminal Justice , Standards 3-1.2(a) and 3-1.3, and, accordingly, prosecutors have " 'a large degree of freedom' to comment on the evidence submitted and urge the jury to draw any and all legitimate inferences from that evidence." Cler , 349 Or. at 487, 245 P.3d 642 (quoting Huber , 41 Or. at 115, 68 P. 400 ). Obviously, a prosecutor does not violate the foregoing rules merely by arguing at closing that the evidence shows that the defendant is guilty. See State v. Simonsen , 329 Or. 288, 298, 986 P.2d 566 (1999), cert. den. , 528 U.S. 1090, 120 S.Ct. 822, 145 L.Ed.2d 692 (2000) (where challenged statements in state's closing argument contained information that the state had introduced as evidence, the defendant "failed to demonstrate how those statements, which referred to evidence already before the jury, resulted in prejudice"); State v. Risen , 192 Or. 557, 566, 235 P.2d 764 (1951) ("Some latitude should be allowed to a prosecuting attorney in his argument in a criminal case in which there is evidence sufficient to justify a denunciation of the defendant's conduct in strong terms[.]").
*592 Similarly, although counsel may not express personal opinions as to witnesses' credibility, counsel may argue that the jury should regard a witness as credible (or not) based on, for instance, the witness's demeanor and testimony. See Charboneau , 323 Or. at 47-48, 913 P.2d 308 (parties permissibly may bolster the credibility of their witnesses indirectly and implicitly through the presentation of corroborating evidence and lawyer permissibly may argue to the jury that it should find facts in accordance with that witness's testimony).
In light of a prosecutor's dual responsibilities to refrain from inflammatory remarks and personal commentary, on the one hand, but to be an advocate for the state's cause, on the other, it is difficult to state a categorical rule regarding a prosecutor's use of the term "victim" to describe a complaining witness where victimhood is disputed. One **136 can imagine situations where such use is meant to convey, improperly, a prosecutor's personal opinion that a witness is credible.[3] But one can readily imagine other situations in which the use of that term is a fair comment on the evidence (e.g. , "we will prove that defendant committed this crime and that [witness] was his victim"). See, e.g. , State v. Madden , 100 N.E.3d 1203, 1211 (Ohio Ct. App. 2017) ("[A] prosecutor's statement on witness credibility is not [improper] where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue." (Internal quotation marks omitted.)). Ultimately, the propriety of a prosecutor's use of the term "victim" will depend on the context in which the word is used.[4] And, if context renders the comment inappropriate, the court has discretion to fashion an appropriate remedy, subject to the defendant's right to a fair trial. See, e.g. , Thompson , 328 Or. at 272, 971 P.2d 879 (trial court abuses discretion in denying motion to strike prosecutor's statement if defendant was denied fair trial in light of statement); Smith , 310 Or. at 24, 791 P.2d 836 (trial court abuses discretion in denying mistrial only if defendant was denied fair **137 trial in light of prosecutor's statement); see generally State v. Serrano , 355 Or. 172, 194, 324 P.3d 1274 (2014) ("The regulation of jury argument is, generally speaking, committed to the discretion of the trial court.").
Thus, to the extent that the state argues that use of the term "victim" by a prosecutor requires a qualitatively different analysis than the use of that term by trial witnesses, we agree. That conclusion informs the dispositive question in this case (and the subject of the state's final argument): whether the trial court erred in denying defendant's pretrial request for an order that "all present, including all parties, witnesses, and *593 staff shall be precluded from referring to the complainant, including but not limited to [SC] and any other alleged 'victim' of abuse, as a 'victim.' " For the reasons we have described, the broad sweep of defendant's motion is problematic. The state argues that defendant's request for a categorical prohibition asked for too much.
The state's point is well taken-as to the prosecutor. We note, here, that our review of a trial court's ruling is limited to the record as it had developed at the time of the ruling; we do not evaluate a court's pretrial decision with the benefit of hindsight by, for example, taking into account what happened at trial. State v. Pitt , 352 Or. 566, 574-75, 293 P.3d 1002 (2012) ("[I]n the usual case, we will evaluate a claim of pretrial error on the basis of the same record that the trial court relied on in making the challenged ruling."). Here, defendant's objection came before any use of the term by the prosecutor at trial, and thus before the trial court could know how the prosecutor would use the term. Because, as discussed above, some contextual uses of the term "victim" will reflect fair comment on the evidence, the trial court was not required to assume, as defendant's motion demanded, that any and all uses of the term "victim" by the prosecutor would be inappropriate. Thus, the trial court, in its discretion, could deny defendant's motion. Pitt , 352 Or. at 573-74, 293 P.3d 1002 ("A trial judge has discretion either to deny or to postpone ruling on a pretrial motion until more information is available."); see also Biegler v. Kirby , 281 Or. 423, 426, 574 P.2d 1127 (1978) (trial court not obligated to sift out admissible evidence from inadmissible evidence when objecting party fails to do so).
**138 We emphasize that our conclusion is based on the general and sweeping nature of defendant's pretrial request. We do not mean to say that a motion to restrict a prosecutor's use of the term "victim" can never properly be the subject of pretrial relief. Further, we recognize that a defendant has a valid interest in preventing the utterance of prejudicial words before they are heard by the jury rather than objecting after the jury hears the term and hoping that the court's remedy will "unring" the proverbial bell. See Pitt , 352 Or. at 573, 293 P.3d 1002 ("[A] motion in limine is preferred because, if counsel must wait to make an objection and receive a ruling in front of the jury, the client could be prejudiced even though the ruling was in the client's favor." (Internal quotation marks and brackets omitted.)); State v. Foster , 296 Or. 174, 182, 674 P.2d 587 (1983) ("An objection to evidence, with a motion to tell the jury to disregard it, is a poor alternative. The old cliche, 'you can't unring a bell,' still applies."). However, a defendant's valid reasons for resolving such concerns before trial do not create an entitlement to more relief than is legally appropriate. Here, defendant's pretrial motion failed to appreciate, much less alert the trial court to, the considerations distinguishing a prosecutor's legitimate use of the term "victim" from uses that are improper. As such, the trial court was not required to prohibit the use of a word that, we have explained, may be used appropriately depending on context. On remand, defendant is free to raise a similar pretrial objection with greater specificity. And, to the extent the trial court overrules some or all of defendant's pretrial objection, defendant remains free to object again during trial before or after the term arises. Pitt , 352 Or. at 574, 293 P.3d 1002 (so stating, noting that re-objection "allows a judge to reevaluate the issue of admissibility in light of what has occurred at trial").
We reach a different conclusion, however, regarding defendant's motion to the extent that it applied to the state's witnesses. We note that the state's arguments on review are directed at the legitimate role of the prosecuting attorney as advocate, which may justify the use of the word "victim" depending on the circumstances. The state has not, however, offered an explanation as to why the use of that term by witnesses , where the factual question of an accuser's victimhood **139 turns on the credibility of that accuser's claims, would ever serve a legitimate, nonvouching purpose. Instead, the state makes the more general point that, because of the breadth of defendant's motion, the trial court did not err in denying it and "leaving it to defendant to object to any use of the term *594 'victim' in an improper or inflammatory way during the course of trial."
That argument fails in light of the categorical nature of the witness vouching rule. Black , 364 Or. at 587, 437 P.3d 1121 ("[T]estimony that constitutes vouching is categorically inadmissible."). As we concluded earlier, the use of the word "victim" by witnesses under the circumstances of this case amounts to vouching, and, where (as here) it is virtually impossible for a witness's use of the term to serve a legitimate, nonvouching purpose, any use of the term is categorically inadmissible. Accordingly, the concept of trial court "discretion" is inapplicable, and it was legal error to permit the witnesses to offer that testimony. See State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000) (where there is only one legally correct outcome, a trial court's "discretion" is an "inapplicable concept").[5]
Because that conclusion was equally apparent at the time of defendant's pretrial motion as it was during and after the evidence was presented, defendant's motion was sufficient to afford the trial court an opportunity to rule correctly, and defendant was not required to renew his witness vouching objection during trial. See Pitt , 352 Or. at 74, 293 P.3d 1002 ("This court previously has recognized that a defendant properly may assign as error the denial of a pretrial motion in limine to exclude arguably irrelevant or prejudicial evidence." (Citing State v. Madison , 290 Or. 573, 575-76, 624 P.2d 599 (1981).)); cf.
**140 State v. Cole , 323 Or. 30, 35, 912 P.2d 907 (1996) (lack of later relitigation of issue decided prior to trial, "even where a statute permits relitigation on a discretionary basis, does not render any claim of error associated with the ruling unpreserved"); Foster , 296 Or. at 183-84, 674 P.2d 587 (notwithstanding lack of later relitigation during trial on the same issue, objection in motion in limine preserved issue of admissibility, as defendant made "a sufficient offer of proof of what would happen in the trial to permit the court to rule intelligently on the propriety of the offered evidence"). Accordingly, the trial court erred by denying defendant's pretrial request to prohibit such testimony.
We next consider whether the trial court's error was harmless-that is, whether there was more than a little likelihood that the error affected the verdict. State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). The state has not developed a harmless-error argument, but we have an independent obligation to consider whether defendant was prejudiced. See id. at 27-28, 77 P.3d 1111 (Oregon Constitution requires this court to affirm a conviction, despite legal error during trial, if the judgment "was such as should have been rendered in the case" (quoting Or. Const., Art VII (Amended), § 3 )).
In general, witness vouching in Oregon is considered prejudicial, so much so in fact that it sometimes requires intervention by the trial court even when parties fail to object to it. See Milbradt , 305 Or. at 630, 756 P.2d 620 ("We suggest in the future that if counsel attempts to elicit similar testimony the trial judge, sua sponte , should summarily cut off the inquiry before a jury is contaminated by it."). We cannot conclude that the trial court's error here was harmless, where the term "victim," far from being a stray reference, was used repeatedly to describe not only the complaining witness, but several other accusers who also testified that defendant had abused them in similar fashion. Given that defendant faced not one but seven witnesses who claimed to be victims of his abuse, and because the testimony of those witnesses was the only evidence that any of the abuse occurred, the repeated references to all of those witnesses as "victims" could *595 have had a subtle but powerful effect on the jury. See Keller , 315 Or. at 286, 844 P.2d 195 (vouching error not harmless **141 where complaining witness's credibility was "critical to the outcome of this case").[6]
In addition, the use of the term by Sturdevant, the detective who investigated the allegations against defendant in 1997, was particularly likely to be prejudicial because his vouching statements were directly inconsistent with defendant's theory of the case. See State v. Bement , 363 Or. 760, 779, 429 P.3d 715 (2018) (error is less likely to be harmless where it relates to a central factual issue). Part of defendant's strategy at trial was to discredit his accusers by emphasizing that they had first alleged abuse in 1997 but that charges were not brought at that time in part because the allegations were too unreliable to support prosecution. Whereas the state argued that charges were not filed in 1997 due to "bad investigation," defendant asserted that law enforcement had competently investigated the allegations and had reasonably concluded that there were reasons to doubt them. Sturdevant's testimony that SC and the other accusers were "victims"-and the resulting implication that he believed the accusers' claims-tended to rebut that key component of defendant's theory. We accordingly cannot say that the error here was harmless. The case must be reversed and remanded for a new trial.
That conclusion obviates the need to resolve the other issue raised on review, whether the trial court erred in permitting the "other acts" witnesses-that is, the six women other than SC who alleged that defendant had abused them as girls-to testify about being abused by defendant. However, because that issue is likely to arise again on remand, we address it briefly.
As noted, defendant argued before trial that the other women's testimony was inadmissible under OEC 404(3) ("other acts" evidence not admissible for propensity purposes but admissible if relevant for another nonpropensity purpose). The state argued that the evidence was admissible both for nonpropensity purposes under **142 OEC 404(3) and to show defendant's sexual interest in children under OEC 404(4) ("other acts" evidence may be admissible to prove propensity if, among other things, risk of unfair prejudice does not substantially outweigh probative value under OEC 403 ). The trial court's order denying defendant's motion was somewhat ambiguous as to whether it concluded that the evidence was admissible under only OEC 404(3) or whether it was admissible under both OEC 404(3) and OEC 404(4). That ambiguity is understandable, given that, when the trial court ruled, this court had decided State v. Williams , 357 Or. 1, 346 P.3d 455 (2015) (holding that OEC 404(4) supersedes OEC 404(3) in criminal cases) but had not yet decided State v. Baughman , 361 Or. 386, 393 P.3d 1132 (2017), which clarified the methodology for ruling on "other acts" evidence with respect to evidence that could be admissible under either OEC 404(3) or (4).[7] Accordingly, on remand, if the state seeks to introduce "other acts" testimony again, the trial court, in accordance with the methodology described in Baughman , should separately consider each theory of relevance under OEC 404 and conduct OEC 403 balancing *596 as to each witness's anticipated testimony.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

When SC reported the conduct underlying the charged crimes, ORS 131.125(2) provided that a "prosecution for [first-degree unlawful penetration] may be commenced ***, if the victim at the time of the crime was under 18 years of age, anytime before the victim attains 30 years of age or within 12 years after the offense is reported to a law enforcement agency ***, whichever occurs first[.]" Under that statute, charges against defendant for sexual crimes allegedly committed against the six women other than SC were time-barred in 2013 for four women because those women were, by then, older than 30 years old. Although two of the women other than SC were younger than 30 years old in 2013, those women did not report any allegations other than what they had reported over 12 years earlier in 1997; thus, the statute of limitations had expired as to their allegations as well.

The trial court ruled shortly after this court decided State v. Williams , 357 Or. 1, 346 P.3d 455 (2015) (holding that OEC 404(4) supersedes OEC 404(3) in criminal cases except to the extent required by the state and federal constitutions) but before this court decided State v. Baughman , 361 Or. 386, 393 P.3d 1132 (2017) (setting out methodology for evaluating admissibility of evidence under both OEC 404(3) and (4) ).

The state asserts that it would be of little consequence if a jury were to learn that the prosecutor believes an accusers' allegations, because the very existence of the criminal charges already conveys that the prosecutor believes the allegations. We agree that jurors can infer from the existence of the prosecution that the prosecutor believes the allegations. Cf. Charboneau , 323 Or. at 48, 913 P.2d 308 ("[W]hen a lawyer presents a witness and argues to the jury that it should find facts in accordance with that witness's testimony, the jury may infer that the lawyer believes the witness."). However, that does not necessarily render harmless all expressions of prosecutors' opinions as to the credibility of a complaining witnesses. The fact that jurors can infer that the prosecutor believes the complaining witness does not alleviate the danger of making the prosecutor's beliefs explicit: that the prosecutor's personal beliefs are put at issue and the jury will be tempted to evaluate witnesses' credibility based on the prosecutor's opinion instead of the evidence alone. See Berg v. Nooth , 258 Or. App. 286, 299-300, 309 P.3d 164 (2013) (so reasoning).

Thus, a prosecutor's use of the word "victim" while questioning a witness may present different contextual considerations than the use of the term during closing argument. Generally, counsel has latitude in commenting on the evidence at summation, after the evidence has already been presented. See, e.g. , Cler , 349 Or. at 487-88, 245 P.3d 642 ("In general, in presenting closing arguments to the jury, counsel have a 'large degree of freedom' to comment on the evidence submitted and urge the jury to draw any and all legitimate inferences from that evidence." (Quoting Huber , 41 Or. at 115, 68 P. 400.)). Counsel's latitude in making comments during questioning, on the other hand, is narrower, given that counsel's job at that time is to present evidence in anticipation of summation. The state, in arguing generally that reference to a defendant's accusers as "victims" falls within the scope of legitimate advocacy, does not explain why such a reference would be justified during questioning.

The state does not argue that defendant's objection was overly broad in the sense that this court has discussed in cases such as State v. Brown , 310 Or. 347, 358-59, 800 P.2d 259 (1990), in which we stated that when "objection is made to the evidence as a whole and is overruled, the trial court will ordinarily not be reversed on appeal if any portion of the offered evidence was properly admissible, despite the fact that other portions would not have been admissible had proper objections been made to such portions of the offered evidence." In any event, we conclude that the Brown rule is not implicated in this case, because although defendant's objection was phrased broadly to encompass statements that would not be "evidence," his argument as to the evidence itself-the witnesses' use of the term "victim"-was entirely correct.

Moreover, as discussed earlier, the term "victim," in this context, also assumed defendant's guilt, undermining the presumption that he was innocent. See, e.g. , State v. Mundon , 129 Haw. 1, 292 P.3d 205, 230 (2012) (trial court on remand should instruct witnesses to refrain from calling complaining witness "victim" because the term undermines presumption of innocence).

That methodology involves a two-step analysis:
"[A] trial court first should determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3). If it is, then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403. However, if a trial court determines that proffered evidence is not relevant for a nonpropensity purpose, then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4) and, at step two, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under OEC 403."
Baughman , 361 Or. at 404-05, 393 P.3d 1132 (footnote omitted).