Argued and submitted March 8, reversed and remanded August 30, 2023, petition for review denied January 12, 2024 (371 Or 825)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRADLEY AUSTIN MONTGOMERY,
*Defendant-Appellant.*

Deschutes County Circuit Court
18CR77859; A176205

536 P3d 627

Defendant appeals from a judgment of conviction after a jury trial for one count of first-degree sodomy, assigning as error the trial court's exclusion of evidence regarding the alleged victim's past sexual behavior, and as plain error the trial court's failure to strike improper vouching by the prosecutor during closing argument or to declare a mistrial. *Held*: The prosecutor's repeated statements that defendant had lied or was a liar improperly vouched for the alleged victim and constituted plain error because the statements were so prejudicial that they deprived defendant of a fair trial. The court therefore reversed and remanded defendant's conviction. Because it will likely arise on remand, the court also addressed and rejected defendant's contention that the trial court erred in excluding evidence of the victim's past sexual behavior.

Reversed and remanded.

Walter Randolph Miller, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Defendant appeals from a judgment of conviction after a jury trial for one count of first-degree sodomy.[1] He assigns as error the trial court's exclusion of evidence regarding the alleged victim's past sexual behavior, and as plain error the trial court's failure to strike improper vouching by the prosecutor during closing argument or to declare a mistrial. We conclude that the prosecutor's improper conduct resulted in reversible error, and we therefore reverse and remand defendant's conviction. Because it will likely arise on remand, we also address defendant's contention that the trial court erred in excluding evidence of the victim's past sexual behavior and conclude that the court did not err.

The sodomy charge stems from defendant's alleged nonconsensual sexual contact with KC, his cousin's wife. Viewing the evidence in the light most favorable to the state, defendant was spending the night at KC's and his cousin's apartment. After a night of socializing, KC's husband fell asleep on the couch. KC directed defendant to a guest bedroom and went to her own bedroom. Two hours later, defendant came into KC's bedroom while she was asleep, pushed aside her underwear, and engaged in oral sex. KC awoke and thought that defendant was her husband, until she felt his hair and his wedding ring. When she realized that defendant was not her husband, she yelled at him to stop, went out of the bedroom, woke her spouse, and told him that she woke to find defendant "going down on her." The spouse confronted defendant, who had returned to the guest bedroom, asking if he had had sex with KC. Defendant said that he did not remember. The spouse then forced defendant from the house and called 9-1-1. Police arrived and questioned defendant about whether he had assaulted KC. Defendant initially replied that he did not remember; but after learning that KC's child had been in the bed with KC, he did admit to having had oral sex with KC but having believed that it was consensual. The police investigation resulted in the charged offense.

Defendant's defense theory was that the sexual conduct was consensual. He testified that he initially lied to

_____
[1]  Defendant was also charged with and acquitted of three other offenses.

police to protect himself and KC, having been aware that KC would not have wanted her spouse to know. Pre-trial, defendant sought to introduce his testimony that, about five years before, KC had had consensual extramarital sex that had resulted in a divorce from her current spouse. The two had since reconciled. Defendant asserted that the evidence was relevant and admissible under OEC 412(2)(b)(A)[2] (providing that evidence of a victim's past sexual behavior is not admissible unless it relates to motive or bias or is otherwise constitutionally required to be admitted) to show that KC had a motive to accuse him. The trial court excluded the testimony as irrelevant and, after a jury trial, defendant was convicted.

Because they are dispositive, we address first defendant's third and fourth assignments of error, in which he asks us to review as plain error the trial court's failure either to *sua sponte* strike improper closing argument by the prosecutor or to *sua sponte* grant a mistrial. As the Supreme Court recently explained in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), a prosecutor's asserted improper statements during closing argument can be reviewed as plain error. The court's review begins with the question whether the prosecutor's statements were obviously improper or impermissible, *i.e.*, whether it was obvious or not reasonably

---

[2] OEC 412 provides, in part:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime [including those at issue in this case] ***, the following evidence is not admissible:

"(a) Reputation or opinion evidence of the past sexual behavior of an alleged victim or a corroborating witness; or

"*****

"(2) Notwithstanding any other provision of law, in a prosecution for a crime or an attempt to commit a crime listed in subsection (1) of this section ***, evidence of an alleged victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless the evidence other than reputation or opinion evidence:

"(a) Is admitted in accordance with subsection (4) of this section; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim;

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted."

in dispute that the statements allowed the jury to consider facts that had not been received into evidence, or otherwise encouraged the jury to decide the case on an improper basis. *See id.* at 314-15.

Here, we have no difficulty concluding that the prosecutor's statements during closing argument and rebuttal encouraged the jury to decide the case on an improper basis. The asserted misconduct consisted in part of repeated statements during closing argument and rebuttal that defendant had lied in his testimony. For example, in closing, the prosecutor argued:

> "So contrast the statement that he gave to law enforcement that night with trial here just yesterday. So she says— or he says that [the victim] touched his back and gave him a look. *First of all, that's a lie.* She testifies to nothing like that."

(Emphasis added.) Defendant had admitted in his testimony at trial that he had lied to police when they came to investigate the report of abuse, telling them that he did not remember assaulting KC or did not know how he got into KC's bedroom. Defendant testified that he had lied because he thought the sex was consensual, he did not know that KC was going to accuse him of assault, and he wanted to protect KC and "save my butt." The prosecutor also told the jury in closing, "And if he's willing to lie to save his butt that night, he is willing to lie in front of you to save his butt from the fate of your verdict." Additionally, the prosecutor told the jury in closing, "He was a liar in November and *he was liar yesterday.*" (Emphasis added.)

Further, the prosecutor told the jury in closing that no one would ever know the truth about what had occurred during the period of time between when defendant and KC went to their separate bedrooms and when KC called 9-1-1:

> "'Beyond a reasonable doubt,' what does that mean? How do you—how do you evaluate it? It doesn't mean that you won't leave here with questions. What did he do for two hours? I don't know. I have no idea. We're never going to know the answer to that. Lord knows he's not going to tell us the truth. I have no idea. You're not going to know. And you're going to have to be able to decide this case fairly and justly without having an answer to that question."

The prosecutor also told the jury in closing that a defendant's own testimony can be used against a defendant and that, just because a defendant testifies does not create reasonable doubt:

> "The defendant's testimony can be used against him. Sometimes people say, 'Well, I mean, I heard another story. I heard his story. It's totally unbelievable, but I heard it. And so, I mean, the fact that his explanation is out there, I mean, I guess that could be true.' It's not.

> "You get—as this jury, you get to emphatically tell him, 'That is a lie.' And you get to sign the verdict form and feel confident that his statement to you was untrue and that [the victim's] statement to you is true. Because a defendant testifies does not create reasonable doubt."

Finally, in rebuttal, the prosecutor argued:

> "When he got up here and he testified and he put his hand up and he told you that he was going to tell the truth, *he lied*."

(Emphasis added.)

In defendant's view, the prosecutor's closing and rebuttal arguments crossed the line from legitimate comment on the evidence to improper vouching for KC and an improper statement of the burden of proof.

We do not agree with defendant that the prosecutor misstated the law or the burden of proof in stating that the fact that a defendant testifies does not give rise to reasonable doubt. It is the state's burden to establish a defendant's guilt beyond a reasonable doubt. *State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922) ("The law presumes every defendant upon trial charged with crime to be innocent, and it devolves upon the prosecution to prove by evidence to the satisfaction of the trial jury beyond a reasonable doubt, that the defendant committed the crime charged in the indictment."). But the prosecutor was correct that the mere fact that a defendant testifies does not give rise to reasonable doubt; it is for the jury to determine whether the evidence meets the state's burden. *State v. Brown*, 306 Or 599, 604, 761 P2d 1300 (1988) ("[I]t is the jury's task * * * to weigh evidence, judge the credibility of witnesses and the reliability

of their testimony, and to resolve conflicts in the evidence."). And we conclude further that the prosecutor's statement did not imply that defendant had the burden to prove reasonable doubt.

But we agree with defendant that the prosecutor's statements that defendant had lied were improper vouching. In presenting closing arguments to the jury, counsel has a large degree of freedom to comment on the evidence submitted and urge the jury to draw any and all legitimate inferences from that evidence. *State v. Stull*, 296 Or App 435, 439, 438 P3d 471 (2019). For example, counsel may argue that the jury should infer that a witness is credible based on the evidence in the record. But counsel may not express a personal opinion of the witness's credibility. *State v. Sperou*, 365 Or 121, 135, 442 P3d 581 (2019); *Heroff v. Coursey*, 280 Or App 177, 194, 380 P3d 1032 (2016), *rev den*, 360 Or 851 (2017) ("[I]t is permissible for a prosecutor to argue that the jury should infer that a witness is credible based on the evidence in the record, so long as the prosecutor does not vouch for the witness by interjecting his or her personal opinion of the witness's credibility."). The state's case depended on which version of events the jury found to be true—KC's or defendant's. The prosecutor could have pointed to evidence in the record to cast doubt on defendant's testimony or to lend credibility to KC's testimony. But it was the jury's role to determine whose version of events was more credible. The prosecutor's repeated statements that defendant had lied or that he was a liar constituted improper vouching from which the jurors could infer that the prosecutor believed KC and not defendant, and the jury might have been tempted to evaluate the witnesses' credibility on that basis rather than on the evidence. *See Berg v. Nooth*, 258 Or App 286, 299-300, 309 P3d 164 (2013) (so reasoning); *Davis v. Cain*, 304 Or App 356, 364, 467 P3d 816, 822, 2020 (quoting statement from *United States v. Edwards*, 154 F3d 915, 922 (9th Cir 1995), that the rule against vouching was "designed to prevent prosecutors from taking advantage of the natural tendency of jury members to believe in the honesty of lawyers in general, and government attorneys in particular"); *see also Davis*, 304 Or App at 365 (a prosecutor's arguments cross into impermissible vouching territory when they are "in the

nature of 'take my word for it,' not 'let me show you.'"). We conclude that the prosecutor's statements were improper.

    The remaining question is whether the prosecutor's improper statements are subject to "plain error" review under the Supreme Court's analysis in *Chitwood*. In that case, the court noted that, for plain error review, there must be "legal error." 370 Or at 311. The court stated that, to establish legal error, "a defendant who seeks review of an unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived the defendant of a fair trial." *Id.* at 313-14. The court stated that, in the unique context of plain error review, a prosecutor's statements constitute "legal error" if they were so prejudicial that an instruction to disregard them would not have been sufficient to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial. *Id.* at 312. In other words, a prosecutor's misconduct constitutes "legal error" in the context of plain error review if it would have been an abuse of discretion for the trial court to deny a motion for a mistrial had a motion for mistrial been made. *See State v. Pierpoint*, 325 Or App 298, 528 P3d 1199 (2023) (applying *Chitwood* to hold that two highly improper prosecutorial statements, considered together, were so prejudicial that they could not have been cured by an instruction).

    We conclude that the prosecutor's statements here rose to the level of "legal error" in this unique plain error context. That is because the state's entire case depended on its ability to persuade the jury that KC was credible and that defendant was not telling the truth when he testified that the sexual contact was consensual. If defendant's counsel had objected to the first of the improper comments—"that's a lie"—the court could have instructed the prosecutor to refrain from suggesting a personal view of defendant's credibility and thereby prevented further misconduct. The court could also have instructed the jury to disregard the prosecutor's comment reflecting a personal view of defendant's credibility and to decide the case based only on its own evaluation of the evidence. The jury would have been required to follow the court's instruction and disregard the prosecutor's comments. Such an instruction would have prevented the jury from relying on the prosecutor's comments as vouching

for KC and would have been sufficiently curative of the prosecutor's misconduct to prevent an unfair trial. *See Chitwood*, 370 Or at 312 ("[A] defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial."). But under *Chitwood*, we are required to consider the totality of the record in determining whether defendant was denied a fair trial. *Id.* ("Ultimately, an appellate court is required to decide 'whether, under the circumstances as a whole, defendant was denied the right to a fair trial, as a matter of law, by the events that transpired at trial.' *Davis*, 345 Or at 583[.]"). We conclude that the prosecutor's repeated inappropriate statements of the prosecutor's personal view that defendant was a liar were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have abused its discretion in denying the motion. Accordingly, under the analysis set forth in *Chitwood*, we conclude that there was "legal error" and, therefore, plain error. We further exercise our discretion to correct the error and therefore reverse defendant's conviction.

Because the issue is likely to arise on remand, we also address defendant's first and second assignments of error, in which he contends that the trial court erred in disallowing his testimony about KC's purported prior extramarital affair that had resulted in a dissolution of marriage from her current spouse. In rejecting the testimony, the trial court said that "the fact of an affair approximately five years prior to this incident in question, with the victim not being in any kind of romantic relationship with defendant, does not tend to prove or disprove that she has a motive." The court commented that "any partner is likely to be unhappy if they find out that their partner has had an affair." The court explained that KC's alleged motive to accuse defendant was not made more or less likely by evidence that KC had had extramarital sex five years earlier.[3] As he argued

---

[3] The court explained:

"[T]he fact of an affair approximately five years prior to this incident in question, with victim not being in any kind of romantic relationship with defendant, does not tend to prove or disprove that she has a motive to fabricate."

below, defendant argues on appeal that evidence of KC's divorce as a result of past infidelity supports the inference that KC had a motive to accuse defendant of sexual assault.

We review the trial court's ruling as to the relevance of the disputed evidence for errors of law, *State v. Davis*, 336 Or 19, 25, 77 P3d 1111 (2003), and we agree with the trial court that the proffered evidence of KC's past extramarital sex was not relevant. "'Relevant evidence' is evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The "fact of consequence" for which defendant asserts the disputed evidence was relevant was KC's purported motive to lie about the consensual nature of the sexual contact with defendant so as to avoid upsetting her spouse.

As the trial court surmised, the risk of upsetting a spouse would likely be present as a result of extramarital sexual conduct, and evidence of KC's past sexual conduct was unlikely to make the motive to lie to avoid upsetting her spouse more or less probable. *See State v. Niles*, 108 Or App 735, 339, 817 P2d 293 (1991), *rev den*, 312 Or 589 (1992) (rejecting similar contention under similar circumstances, because "[e]vidence about the prior incidents did not make it more probable that [the victim] was motivated to fabricate"). The trial court here explained that evidence of KC's prior infidelity "doesn't prove anything other than * * * some * * * vague argument that [KC] may be promiscuous or had engaged in * * * what some people might think as * * * immoral or improper behavior." We agree with the trial court that the evidence was not relevant to demonstrate KC's purported motive.

Further, the evidence that defendant offered is the type of evidence that we have held OEC 412 was intended to prohibit. *See State v. Beeler*, 166 Or App 275, 285, 999 P2d 497, *rev den*, 331 Or 244 (2000) ("[E]vidence of a victim's collateral sexual activity is not admissible to show consent to the sexual activity that is the subject of an alleged crime."); *State v. Beden*, 162 Or App 178, 187, 986 P2d 94 (1999) (explaining that OEC 412 is intended to protect

against "unfair prejudice" by protecting victims of sexual crimes from the "'degrading and embarrassing disclosure of intimate details about their private lives' that might provide an improper basis for a juror to weigh the credibility of a victim-witness or for making a decision in the case." (quoting Legislative Commentary to OEC 412)). We conclude that the trial court was correct in excluding the evidence as irrelevant. Thus, although we reverse defendant's conviction because of prosecutorial misconduct, we reject defendant's contentions regarding evidentiary error.

Reversed and remanded.