No. 41          January 24, 2024          335

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRITTANY MARIE ALLEN,
*Defendant-Appellant.*

Tillamook County Circuit Court
20CR41647; A177905

Mari Garric Trevino, Judge.

Submitted December 22, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this criminal case, defendant appeals her conviction for possession of methamphetamine. ORS 475.894. Defendant presents four assignments of error, arguing that the trial court plainly erred in failing to, *sua sponte*, strike or instruct the jury to disregard vouching evidence admitted during the investigating officer's testimony and strike prosecutorial vouching during closing arguments.[1] For the reasons that follow, we affirm.

FACTS

In July 2020, Tillamook Police Detective Barnett and Tillamook Sheriff's Detective Ross surveilled a home as part of a narcotics investigation. The detectives observed defendant drive away from the home, and they followed her. After defendant failed to signal a turn, the detectives stopped her. During that stop, the detectives asked to search defendant's belongings, and she consented. The detectives found a plastic bag containing methamphetamine inside a small black bag that was inside defendant's purse. They also found a pipe used for ingesting methamphetamine and a straw that can be used as packaging for controlled substances.

Defendant said that the drugs were not hers, that she did not know how they got into her purse, and that she had been "clean." Detectives *Mirandized* defendant and began discussing the methamphetamine with her. Defendant immediately denied that she owned the drugs or knew about them. Ross told defendant that "right now you are filling me full of shit. And I'm not believing really the

---

[1] In her opening brief, defendant challenges two special probation conditions: one condition restricts alcohol possession and use and the other condition restricts entry to bars, taverns, and similar establishments. Although defendant requested bench probation at sentencing, defendant did not object to those special conditions during the sentencing proceeding. In addition, none of her assignments of error relate to the special probation conditions, her brief makes no arguments explaining the basis for that challenge, and she makes no arguments for plain error review of those conditions. Because the claim was not properly presented to this court, we decline to review the special conditions. *See* ORAP 5.45 ("No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record.").

*** whole line of crap that you are telling me." When Ross asked defendant where she got "the dope at," defendant said, "I don't," to which Ross interjected, "You can try to play the game that you didn't know it was in there. But that's bullshit. I know that's complete bullshit." Shortly afterwards, defendant said that she "got it from him."

During defendant's trial, the state played for the jury Ross's body camera video of defendant's interaction with the detectives. Defendant did not object to the admission of that evidence.

During closing argument, defense counsel told the jury:

> "[R]e-watch the video very carefully. At [no] point in the video does she actually admit to knowing about the methamphetamine in her bag. She says it's not hers immediately. And she is very persistent, no matter how much Detective Ross doesn't believe her and continues to call her a liar."

Defendant argued that the evidence showed that it was possible that the methamphetamine had been placed in defendant's bag by someone else. Defendant also argued that, in failing to investigate whether someone else at the house had placed the methamphetamine in her purse, the detectives had failed to conduct a thorough investigation:

> "[The detectives] have made up their mind. They ask to search [defendant's] bag as soon as possible. And no matter how many explanations [defendant] gives, [the detectives] refuse to give her even the slightest bit of benefit of the doubt. They don't listen to her at all.

> "They were so determined by what they thought was the truth, they just went on it. They didn't have the benefit of hindsight then and there. But you all do."

In response, the prosecutor argued in rebuttal that "the police didn't listen to [defendant] when she said she didn't know anything about it. A real common-sense reason. She was lying and they knew it."

The jury found defendant guilty of unlawful possession of methamphetamine, and defendant now appeals.

## DISCUSSION

In her first three assignments of error, defendant contends that the trial court plainly erred by admitting into evidence three instances of "vouching" from Ross's body camera video, particularly Ross's statements that (1) defendant was "filling [him] full of shit," (2) he did not "believe [defendant's] whole line of crap," and (3) defendant's denial that she knew about the methamphetamine in her purse was "complete bullshit." In her fourth assignment of error, defendant argues that the trial court committed plain error when it "allow[ed]" the prosecutor to argue that "the police didn't listen to [defendant] when she said she didn't know anything about it. A real common-sense reason. She was lying and they knew it." Defendant acknowledges that she did not preserve her objections, but she contends that it was plain error to admit the challenged statements and not strike the argument, and she urges us to exercise our discretion to correct the error.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (citation omitted). We may exercise our discretion to review an unpreserved claim of error as plain error if the asserted error (1) is one of law, (2) is "obvious, not reasonably in dispute," and (3) "appears on the face of the record," so that we need not "go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable." *State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000) (citation and internal quotation marks omitted).

*Defendant's First Three Assignments of Error.* A witness may not "vouch" for the credibility of another witness by expressing a personal opinion as to that witness's credibility. *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019) (citation omitted). Whether a statement constitutes vouching depends on the context in which it arose and the context in which it was offered at trial. *Id*. (citation omitted). Ultimately, "[w]hether a witness's statement constitutes impermissible vouching is a legal question." *Id*. (citation omitted). The rule against vouching applies to out-of-court statements that are admitted at trial, but an out-of-court

statement is "subject to the categorical prohibition against vouching evidence *only if* the statement is offered for the truth of the credibility opinion that it expresses." *State v. Chandler*, 360 Or 323, 334, 380 P3d 932 (2016) (emphasis added). If the statement is offered for another purpose, such "as context for the responses that those statements elicited from [the] defendant," then the statement does not constitute vouching and is not "categorically inadmissible." *Id.* at 334-35; *see also State v. Peterson*, 291 Or App 573, 578, 422 P3d 421, *rev den*, 363 Or 815 (2018) (holding that the trial court did not plainly err by failing to, *sua sponte*, strike an out-of-court statement, because the statement "provided relevant context for the victim's emotional reaction to the question of why it took her so long to report the abuse, and was part of a larger statement that may have been intended to console the victim so [the investigator] could elicit more information").

In this case, there was no indication that the state offered the detective's statements and the video for their truth. It is not "obvious," from the context in which they were made, that Ross's statements were "true vouching." They could have been admitted to help show why the detectives took or did not take certain actions, as context for Ross's conversation with defendant, to explain defendant's demeanor during the interaction, or as "part of a larger statement that may have been intended to *** elicit more information." *Peterson*, 291 Or App at 578.

Defendant argues that the record shows that the statements were offered for their truth, because the prosecutor referenced them during rebuttal arguments. But there is no plain error when we are required to "choose between competing inferences about whether defendant made a conscious decision not to object." *State v. Vage*, 278 Or App 771, 777, 379 P3d 645, *rev den*, 360 Or 697 (2016). Here, a competing inference exists that defendant did not object to Ross's statements because she believed they would help her defense. Indeed, in closing, defendant argued that the statements proved that the detectives had conducted an inadequate investigation. In light of those competing inferences, plain error review is not appropriate.

*Defendant's Fourth Assignment of Error.* A prosecutor's improper statements during closing arguments can be reviewed as plain error. *State v. Chitwood*, 370 Or 305, 314-15, 518 P3d 903 (2022). "[A] prosecutor's misconduct constitutes 'legal error' in the context of plain error review if it would have been an abuse of discretion for the trial court to deny a motion for a mistrial had a motion for mistrial been made." *State v. Montgomery*, 327 Or App 655, 661, 536 P3d 627 (2023) (citing *State v. Pierpoint*, 325 Or App 298, 528 P3d 1199 (2023)).

At trial, lawyers are "prohibited from giving their personal opinions on the credibility of witnesses." *Sperou*, 365 Or at 129 (citation omitted). "[A]lthough a prosecutor's comments regarding witness credibility may present problems similar to those underlying the evidentiary rule against 'vouching' testimony, it is also true that prosecutors, as advocates for the state's cause, have wide latitude to make *arguments* from the evidence[.]" *Id.* at 130 (emphasis in original).

Defendant argues that the prosecutor shared a personal opinion on defendant's credibility when he argued during rebuttal that defendant "was lying and [the detectives] knew it." Viewed in context, that statement was a reference to the evidence at trial, rather than the prosecutor's own opinion as to defendant's credibility. *See Heroff v. Coursey*, 280 Or App 177, 194, 380 P3d 1032 (2016) ("[I]t is permissible for a prosecutor to argue that the jury should infer that a witness is credible based on the evidence in the record, so long as the prosecutor does not vouch for the witness by interjecting his or her personal opinion of the witness's credibility."). The prosecutor's statement was in response to defendant's assertions that the detectives had "made up their mind" and did not "give [defendant] even the slightest bit of benefit of the doubt." Thus, the prosecutor's and defense counsel's arguments were made with reference to the body camera video. We conclude that the prosecutor's arguments, when read in context, were a reference to evidence at trial and not an expression of the prosecutor's own opinion as to defendant's credibility. Thus, the error is not "obvious," and plain error review is not appropriate.

Affirmed.