Argued and submitted April 16, 2018; reversed and remanded as to fourth and fifth specifications, otherwise affirmed October 7, 2020; petition for review denied March 18, 2021 (367 Or 709)

JUSTIN THERON BEHRLE,
*Petitioner-Respondent,*

*v.*

Jeri TAYLOR,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Appellant.*

Umatilla County Circuit Court
CV141618; A161724

476 P3d 475

In this post-conviction proceeding, the superintendent of the Eastern Oregon Correctional Institution appeals from a judgment granting petitioner relief based on claims of inadequate assistance of trial counsel. In the underlying criminal action, petitioner was tried to the court and convicted of a number of sex crimes. In this proceeding, the post-conviction court concluded that petitioner was provided inadequate assistance of counsel based on (1) trial counsel's failure to object to statements by the prosecutor during closing argument that, petitioner contended, amounted to impermissible vouching and (2) counsel's failure to object to the prosecutor's leading questions during the direct examination of the victim. The superintendent appeals, asserting that the post-conviction court erred in concluding that trial counsel provided deficient performance and that, even if there was deficient performance, petitioner failed to prove that counsel's deficient performance prejudiced him. *Held*: The post-conviction court erred in granting post-conviction relief. With respect to the vouching claims, because the prosecutor's comments did not rely on the prosecutor's own opinion or facts outside the record, the post-conviction court erred in concluding that all reasonable trial counsel would have objected to those comments. With respect to the issue of leading questions, petitioner did not show that counsel's failure to object could have tended to affect the outcome of the case.

Reversed and remanded as to fourth and fifth specifications; otherwise affirmed.

Rick J. McCormick, Senior Judge.

Timothy A. Sylwester argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Jed Peterson argued the cause for respondent. Also on the brief was O'Connor Weber LLC.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Reversed and remanded as to fourth and fifth specifications; otherwise affirmed.

_____

* Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

In this post-conviction proceeding, defendant, the superintendent of the Eastern Oregon Correctional Institution, appeals from a judgment granting petitioner post-conviction relief based on claims of inadequate assistance of trial counsel. In the underlying criminal action, petitioner was tried to the court and convicted of a number of sex crimes arising out of two incidents in which petitioner abused a 13-year-old victim during a camping trip. In this proceeding, petitioner asserted, among other things, that he was provided inadequate assistance of counsel based on (1) trial counsel's failure to object to statements by the prosecutor during closing argument that, petitioner contended, amounted to impermissible vouching and (2) counsel's failure to object to the prosecutor's leading questions during direct examination of the victim. The post-conviction court agreed with petitioner and granted post-conviction relief on those specifications of inadequate assistance of counsel. The court rejected petitioner's remaining specifications.

The superintendent appeals, asserting that the post-conviction court erred in concluding that trial counsel provided deficient performance and that, even if there was deficient performance, petitioner failed to prove that counsel's deficient performance prejudiced him. Petitioner cross-assigns error to the post-conviction court's rejection of his three other specifications of inadequate assistance of counsel.[1]

---

[1] Petitioner initially attempted to cross-appeal the post-conviction court's judgment, but we concluded that his cross-appeal was not timely filed and, accordingly, dismissed the cross-appeal. *Behrle v. Taylor*, 283 Or App 629, 630, 389 P3d 419 (2017) (concluding that ORS 138.071(3) is not applicable to post-conviction appeals and adhering to the appellate commissioner's order of dismissal). Petitioner sought, and the Supreme Court accepted, review of our decision. *Behrle v. Taylor*, 361 Or 645, 398 P3d 43 (2017). Before the Supreme Court issued a decision, however, petitioner raised the same contentions in this case—which is the superintendent's appeal—by cross-assigning error various challenges to the post-conviction court's rulings in his answering brief. The Supreme Court concluded that the cross-assignments of error rendered moot the question of whether petitioner's cross-appeal was timely filed, because he could "obtain by cross-assignment of error in the Court of Appeals the same relief that he could have obtained if the Court of Appeals had not dismissed his cross-appeal." *Behrle v. Taylor*, 362 Or 509, 513, 412 P3d 1179 (2018). Accordingly, the Supreme Court dismissed petitioner's petition for review as moot. *Id.*

After considering the merits of petitioner's cross-assignments of error, we reject them without further discussion, concluding, as the post-conviction court did, that, even if counsel failed to exercise reasonable professional skill and judgment, that deficient performance did not prejudice petitioner. As explained below, we also agree with the superintendent's arguments that the post-conviction court erred in determining that petitioner was entitled to post-conviction relief based on trial counsel's failure to object to the prosecutor's leading questions on direct examination of the victim and in granting relief on petitioner's fourth specification of inadequate assistance of counsel, regarding vouching. Accordingly, we reverse and remand.

To obtain post-conviction relief, a petitioner must establish a "substantial denial" of "rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." ORS 138.530(1)(a). A criminal defendant is guaranteed the right to the adequate assistance of counsel under Article I, section 11, of the Oregon Constitution and the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014); *Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984). The standards under the Oregon Constitution and the federal constitution are "functionally equivalent." *Montez*, 355 Or at 6-7; *Aguilar v. State of Oregon*, 292 Or App 309, 313-14, 423 P3d 106 (2018) (recognizing same and observing that there are some issues—not present in this case—where the state and federal standards diverge).

To prevail on a claim of inadequate assistance of counsel, a petitioner must show both deficient performance and prejudice. That is, the petitioner must show that his or her counsel "failed to exercise reasonable professional skill and judgment and that, because of that failure, the petitioner suffered prejudice." *Pereida-Alba v. Coursey*, 356 Or 654, 661-62, 342 P3d 70 (2015). "The burden of proof of facts alleged in the petition shall be upon the petitioner to establish such facts by a preponderance of the evidence." ORS 138.620(2).

We are bound by the court's factual findings "if any evidence in the record supports those findings." *Fisher v. Angelozzi*, 285 Or App 541, 545, 398 P3d 367 (2017). If the post-conviction court does not make express findings on a specific issue and there is evidence from which the facts could be decided more than one way, we will presume that the court decided the facts in a manner consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We review the post-conviction court's legal conclusions for errors of law. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015).

As noted above, the post-conviction court determined that petitioner was entitled to post-conviction relief on his fourth and fifth specifications of inadequate assistance of counsel. To the extent that there is any dispute about the facts, we recount them consistently with that determination. The events that gave rise to the charges against petitioner took place during a camping trip that included petitioner, the 13-year-old victim, S, S's mother, who was romantically involved with petitioner, and S's mother's roommate, Taasevigen, among others. An extended recitation of the details of the events during the camping trip is not necessary to resolve the issues on appeal.

Petitioner was charged with one count each of second-degree sodomy, first-degree sexual abuse, and second-degree unlawful sexual penetration. He waived his right to a jury trial and was tried to the court. The state presented direct evidence of the abuse from S and a police detective who had interviewed her. The state also presented evidence about the events before and after the abuse, both on the camping trip and at the home that S, her mother, petitioner, and Taasevigen shared. That evidence came from S's mother and Taasevigen. In general terms, their testimony suggested that, during the camping trip and when they returned home, Taasevigen was suspicious that something inappropriate was happening between petitioner and S, while S's mother at first was reluctant to believe that but eventually came to believe it. Finally, the state presented evidence from a friend of S, J, in whom S had confided about the abuse, and who had alerted S's mother.

The theory of the defense appears to have been simply to have petitioner testify that the abuse had not happened and to ask the court to conclude that petitioner was more credible than the state's witnesses. The trial court found petitioner guilty on all of the charges. Petitioner filed a notice of appeal from the resulting judgment, but later voluntarily dismissed that direct criminal appeal.

Petitioner then initiated this post-conviction proceeding, alleging that he received inadequate and ineffective assistance of counsel in violation of his rights under Article I, section 11, and the Sixth Amendment. The post-conviction court considered documentary evidence, primarily the transcript of the trial, and heard argument from counsel. Neither party presented any evidence from petitioner's trial counsel.

The court determined that petitioner was entitled to post-conviction relief on his fourth and fifth specifications of inadequate assistance. We begin by considering petitioner's fifth specification, which the superintendent challenges in her second assignment of error.

In that assignment, the superintendent challenges the post-conviction court's grant of relief based on petitioner's claim that trial counsel failed to object to "yes or no" questions asked by the prosecutor during direct examination of S. In the petition, petitioner asserted that "[l]eading questions were common throughout the complainant's direct testimony" and he identified 12 exchanges that elicited "yes" responses from S as "particularly objectionable."

The post-conviction court noted that there were many yes or no questions in the direct examination of S and that "this goes beyond just not objecting to a question, it is a—basically her entire testimony." The court then explained that, because this case was a matter of credibility, and, because those questions precluded attacking the consistency of S's testimony, competent counsel would have objected and that, "[i]f there was a strategy [to not object] in this particular case, under these circumstances, I don't think it was a reasonable one." The court also concluded that it could not "say in good conscience that it wouldn't have a tendency to

affect the outcome because the victim's testimony was so critical to the issues and allegations."

On appeal, the superintendent argues that the yes or no questions were not necessarily leading questions, and that any leading questions were permissible in context. The superintendent further asserts that petitioner failed to establish prejudice due to trial counsel's failure to object. Petitioner responds that "[t]rial counsel failed to effectively implement a strategy of challenging [S]'s story by failing to object when the state elicited damaging testimony based on impermissible questions." Petitioner further argues that he was prejudiced because, if counsel had objected and the prosecutor had asked only proper questions, the result could have been different.

A problem with petitioner's argument, and with the post-conviction court's ruling, arises on the prejudice prong of petitioner's claim. When a petitioner faults trial counsel for failing to take action that would have yielded different or additional witness testimony, "it is incumbent on the petitioner to provide 'evidence by affidavit, testimony or otherwise as to what [the] testimony would have been so as to allow an evaluation of the likely effect of that testimony at trial.'" *Burcham v. Franke*, 265 Or App 300, 315-16, 335 P3d 298 (2014) (quoting *Carias v. State of Oregon*, 148 Or App 540, 547, 941 P2d 571 (1997)).

Here, petitioner submitted no direct evidence of what S might have said if she had been required to recount the abuse in her own words rather than merely agreeing with the prosecutor's descriptions of what happened. Nor does the record otherwise allow any inference that, questioned differently, she might have said something more advantageous to petitioner or that had a tendency to affect the verdict. For example, the record contains no previous or subsequent descriptions of the abuse that, if S had testified to them on direct examination, might have led the trier of fact to a different conclusion about the disputed events or about her credibility.[2]

---

[2] We express no opinion about what kinds of evidence might allow an inference that, if questioned differently, a witness might have testified more favorably to a petitioner. It is sufficient for purposes of this case to conclude that no such

Absent any such evidence, petitioner argues only that, if S had been questioned differently, she might have said something different and more favorable to him. But petitioner bore the burden of proving his claims by a preponderance of the evidence, and, on this record, that possibility is mere speculation. Thus, we conclude that, assuming that counsel's failure to object to the questioning of S was deficient performance, petitioner did not show that it was a failure that "could have tended to affect the outcome of the case." *Green*, 357 Or at 323 (internal quotation marks omitted); *see also id.* (explaining that the standard for prejudice "demands more than mere possibility, but less than probability" of a different outcome).

We likewise conclude that the court erred in granting relief on petitioner's fifth specification of inadequate assistance of counsel. In that specification, petitioner asserted that counsel's performance was inadequate because "[t]rial counsel failed to object to the prosecutor's vouching, second-hand vouching, and comment on [p]etitioner's credibility during opening and closing statements." Specifically, petitioner identified the following two comments during the prosecutor's opening statement and six comments during the prosecutor's closing argument as impermissible vouching:

"a. Opening Statements. The prosecutor's improper comments during opening statements include the following:

"[A detective] then interviewed [S], who was very reluctant to talk to Detective Fryett about what had happened. She frequently would not answer questions or look down, not make eye contact and [give] one or two word answers.

"It is the State's position that at the conclusion of this case, that evidence will convince the Court beyond a reasonable doubt that, No. 1, [S] is a compelling and credible witness; and that the other witnesses who observed the behaviors corroborate her story and prove beyond a reasonable doubt that the defendant has committed these acts.

---

evidence is present here. Further, to the extent that petitioner's argument can be read to suggest that the post-conviction court determined that the leading questions themselves tended to affect the victim's credibility, regardless of her answers to those questions, we do not understand the post-conviction court to have made that determination, nor would the record have supported it.

"b. Closing Argument. The prosecutor's improper comments during [closing] statements include the following:

"[The victim's] inability to talk about some things with the ease that she would, very neutral things, when it came to such things as talking about sexual acts, she closed down in a very natural way that one would expect from a 13-year-old who had been sexually abused; that she was a credible witness.

"This is an event that clearly happened. It is not something that could be made up by a 13-year-old.

"And how about \*\*\* Taasevigen, as neutral as a party you can get. Granted, she is more of a friend to the mother of the victim than the defendant, but she is not in a relationship with the defendant, which, quite frankly, would bode for—and I think it is the reason why [the victim's mother] didn't want to believe what she gradually came to believe, which was the defendant had been sexually abusing her daughter. Imagine how hard that is to come to the realization that the man you have been sleeping with, that you had a relationship with in excess of a year, that you are attempting to reconcile with has been doing this. It took time, and it took compelling information to convince her. [Tassevigen] doesn't have that kind of baggage in her relationship with the defendant. So I came to that conclusion a little bit quicker.

"There is just simply no reason to believe that \*\*\* Taasevigen would make that up.

"While she may not have the mental faculties to engage and consent to what happened, her body is. And that's what happened here, he took advantage of that, and he used her. And he used her for his own sexual gratification, and he is the one who is lying in this case, Your Honor.

"The Court should find that this is a very good cause in which the Court only has to rely on—does not have to rely exclusively on the credibility of one witness, although the Court can, and in this case I believe it was sufficient."

(Record citations and boldface omitted.)

The post-conviction court granted relief on that specification, concluding that there was vouching, "particularly" in the third comment that the prosecutor made in closing argument, about Taasevigen. In explaining its conclusion

that that comment was impermissible vouching, the post-conviction court determined, "implicit in that statement is, is that the victim's mother believed [Taasevigen], and therefore she believed the victim, and it clearly—I think—is a situation where the district attorney is vouching." The court further concluded that trial counsel's deficient performance in failing to object to the prosecutor's statements had a tendency to affect the outcome of the trial, as credibility was the central question of the case: "[I]t's a close question, but I believe that there was a tendency to affect the outcome of the trial, even though it was tried to a judge."

As a threshold matter, petitioner and the superintendent disagree about the scope of the post-conviction court's ruling granting relief with respect to the alleged vouching. The superintendent argues that we need consider only the one comment that the court noted was "particularly" vouching, arguing that that is the only comment that the post-conviction court concluded constituted vouching. Petitioner asserts that we must consider all of the comments in the prosecutor's opening and closing arguments identified in his petition, because the court granted relief broadly based on the fourth allegation. Although the post-conviction court made some statements to the effect that it did not believe that all of the prosecutor's comments amounted to impermissible vouching, we agree with petitioner's assertion that we must review all of the comments identified in the petition, because the court granted relief on petitioner's fourth claim and it did not expressly exclude any of the comments from its ruling.

The Supreme Court recently distilled the central principles of vouching, by both witnesses and prosecutors, from its case law, and we begin with those principles.

> "'Vouching' refers to the expression of one's personal opinion about the credibility of a witness. In Oregon, witnesses are categorically prohibited from giving vouching testimony. That principle is commonly called the 'vouching rule' and is a judicially created rule of evidence designed to serve the policy goals of ensuring that the jury remains the sole arbiter of witness credibility and that the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony. The rule applies to both direct

comments and other statements, whether made in or out of court, that are 'tantamount' to comments on the veracity of other witnesses."

*State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019) (citations, internal quotation marks, and brackets omitted).

Here, the evidentiary rule against vouching does not apply, because petitioner's contention was that the prosecutor, not a witness, vouched for the credibility of the state's witnesses. However, "[a]t trial, lawyers are similarly prohibited from giving their personal opinions on the credibility of witnesses." *Id.* at 129. Although that rule is "similar to the witness vouching rule, *** it is not a rule of evidence." *Id.* (emphasis omitted). "The rationale for the principle is that counsel's credibility opinions are not evidence and are sometimes based on facts not in evidence[.]" *Id.* "[A]lthough a prosecutor's comments regarding witness credibility may present problems similar to those underlying the evidentiary rule against 'vouching' testimony, it is also true that prosecutors, as advocates for the state's cause, have wide latitude to make arguments from the evidence[.]" *Id.* at 130 (emphasis omitted).

Thus, as we recently summarized, "prosecutors have substantial leeway to argue about the evidence and to try to persuade jurors to their view of the evidence, but they may not interject their own personal views of a witness's credibility." *Davis v. Cain*, 304 Or App 356, 364, 467 P3d 816 (2020) (emphasis omitted); *see also Sperou*, 365 Or at 136 (relying on *State v. Madden*, 100 NE3d 1203, 1211 (Ohio Ct App 2017), for the proposition that a "'prosecutor's statement on witness credibility is not [improper] where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue'") (brackets in *Sperou*); *id.* at 134 (noting that "statements by attorneys at trial are generally required to be limited to the issues and evidence presented" and citing *Cler v. Providence Health System-Oregon*, 349 Or 481, 487-88, 245 P3d 642 (2010), for the proposition that "counsel has a large degree of freedom to comment on the admitted evidence at closing and may urge the jury to draw any and all legitimate inferences from that evidence, but counsel may not make statements of facts

outside the range of evidence" (internal quotation marks and citation omitted). As we explained in *Heroff v. Coursey*, 280 Or App 177, 194, 380 P3d 1032 (2016), *rev den*, 360 Or 851 (2017): "[I]t is permissible for a prosecutor to argue that the jury should infer that a witness is credible based on the evidence in the record, so long as the prosecutor does not vouch for the witness by interjecting his or her personal opinion of the witness's credibility." In distinguishing unacceptable vouching from acceptable arguments about witness credibility, we recently observed that a prosecutor's arguments cross into impermissible vouching territory when they are "in the nature of 'take my word for it,' not 'let me show you.'" *Davis*, 304 Or App at 365.

The post-conviction court explained its reasoning only with regard to the statement that, in its view, "particularly" constituted vouching. In closing, the prosecutor made the following argument:

"And how about * * * Taasevigen, as neutral as a party you can get. Granted, she is more of a friend to the mother of the victim than the defendant, but she is not in a relationship with the defendant, which, quite frankly, would bode for—and I think it is the reason why [the victim's mother] didn't want to believe what she gradually came to believe, which was the defendant had been sexually abusing her daughter.

"Imagine how hard that is to come to the realization that the man you have been sleeping with, that you had a relationship with in excess of a year, that you are attempting to reconcile with has been doing this. It took time, and it took compelling information to convince her.

"[Taasevigen] doesn't have that kind of baggage in her relationship with the defendant. So I came to that conclusion a little bit quicker.[3] But her observations, and of most

---

[3] The superintendent contends that the prosecutor misspoke here and intended to say "*she*"—Taasevigen, not the prosecutor—"came to that conclusion a little bit quicker." Petitioner responds that, because the post-conviction court granted relief, we must assume that it found the facts, including the fact of what the prosecutor said, in petitioner's favor. As explained below, we conclude that the post-conviction court's reasoning did not rest on whether the prosecutor referred to himself or to Taasevigen in this sentence.

To the extent that we might be bound by an implicit finding that the prosecutor referred to himself, and not Taasevigen, *but see Pereida-Alba*, 356 Or at 671 ("If

import, she does remember them coming back from camping or this little hike expedition in which their arms were intertwined. She described such things as flirting and a conversation being much like school kids, in high school passing notes back and forth."

Based on that argument, the post-conviction court concluded that "implicit in that statement is that the victim's mother believed [Taasevigen], and therefore she believed the victim" and therefore that the prosecutor had engaged in impermissible vouching in making the argument. As we understand it, the court reasoned that the argument ran afoul of the evidentiary rule against vouching—the court concluded that the prosecutor was using the fact that Taasevigen and, ultimately, the victim's mother believed that the victim had been abused to impermissibly bolster the victim's credibility.

We agree with the post-conviction court's understanding of the prosecutor's argument, *viz.*, the prosecutor's argument was relying on evidence in the record to argue that petitioner had abused the victim. That is, the prosecutor was arguing that the victim's testimony was truthful, but that conclusion does not fully answer whether it was an impermissible argument. Under the circumstances in this case, however, that argument was not impermissible. As explained above, no witness may opine on the credibility of another witness. *Sperou*, 365 Or at 128. The purpose of that rule is to avoid the risk that the jury's role in determining the credibility of witnesses will be usurped by another witness. *Id.* However, the prosecutor is not a witness; the prosecutor is the advocate for the state, and that role requires making reasoned arguments from the evidence. *Id.* at 130. That, in turn, necessarily includes explaining why the trier of fact should believe one version of events over another. In almost any case—and especially in a case that turns on the credibility of key witnesses—that role will include arguments

---

an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption [that the court resolves factual disputes consistently with its ultimate conclusion] does not apply), we conclude that the prosecutor's reference to his own opinion was so minor—and so fully embedded in a reasoned argument about why, based on the evidence, the court should come to the same conclusion—that it does not support the determination that petitioner was prejudiced by it.

that, for particular reasons reflected in the evidence, certain witnesses are credible and others are not. *Id.* at 135 ("[A]lthough counsel may not express personal opinions as to witnesses' credibility, counsel may argue that the jury [or factfinder] should regard a witness as credible (or not) based on, for instance, the witness's demeanor and testimony." (Emphasis omitted.)).

Here, in the prosecutor's argument regarding Taasevigen, as well as most of the other comments that petitioner identified, the prosecutor was explaining why the evidence supported the conclusion that the state's witnesses were credible and petitioner was not. That those arguments included contentions about the credibility of witnesses based on the facts in evidence did not make them impermissible. The arguments were in the nature of "let me show you," not "take my word for it." *Davis*, 304 Or App at 365. That is, they did not imply knowledge of facts outside the record, and they did not rest on the prosecutor's personal credibility; rather, the arguments were based on clearly articulated inferences from the evidence that the prosecutor asked the trier of fact to draw. *See Madden*, 100 NE3d at 1211 (a prosecutor's statement on credibility is impermissible where it "implies knowledge of facts outside the record" or "places the prosecutor's personal credibility at issue"). Thus, they did not violate the rule against lawyers giving their own opinions about the credibility of witnesses.

Although, as explained above, the court articulated its reasoning on the fifth specification only with respect to the comment about Taasevigen, two more of the prosecutor's comments merit discussion. The first two comments in closing argument that petitioner contended were improper vouching are as follows:

> "[The victim's] inability to talk about some things with the ease that she would, very neutral things, when it came to such things as talking about sexual acts, she closed down in a very natural way that one would expect from a 13-year-old who had been sexually abused; that she was a credible witness.
>
> "This is an event that clearly happened. It is not something that could be made up by a 13-year-old."

Read in isolation, those comments appear to rest on facts that are not in evidence but that the trier of fact could infer are true based on the prosecutor's own experience—that it is "natural" for a 13-year-old who has been abused to "close down" when discussing sexual acts and that the abuse that S described could not be made up by a 13-year-old.

When we view those challenged statements in the context in which they arose, however, it becomes clear that they were summaries of detailed arguments based on the evidence, not assertions of the prosecutor's own knowledge. *See Sperou*, 365 Or at 128 ("[C]ertain statements might be vouching in some contexts but not others. Accordingly, it is important to consider each statement in the context in which it was made."); *id.* at 136 (applying that principle to prosecutor's statements). The relevant portion of the prosecutor's closing argument begins just before the first challenged statement and continues through the second statement.

> "I believe that in assessing [S]'s credibility and testifying to the Court, and here is where I think it is important to remember what it is like to be a 13-year-old, to come into Court, as she did, and face the individual who sexually abused her and [betrayed] her, a trust that she placed in him is very challenging.
>
> "Her inability to talk about some things with the ease that she would, very neutral things, when it came to such things as talking about sexual acts, she closed down in a very natural way that one would expect from a 13-year-old who had been sexually abused; that she was a credible witness.
>
> "But let's talk about then how it is the Court is supposed to come to that conclusion and what evidence supports that. In that regard, I would talk about the functions or the evaluating witness testimony instruction, that if this were a jury trial I would be talking about.
>
> "As the Court is aware, I think there are four that will apply. We will start with applying that formula to [S]. The first one being the manner in which the witness testified. By that, I mean was she appropriate when she talked about the things she was talking about in terms of emotion or her demeanor. As you may recall, while she did not have a lot of emotion necessarily, breaking down and crying

\*\*\*, perhaps because she is on antianxiety medications or whether she is just not an emotional person when it comes to talking about it.

"She was very appropriately reacting in her demeanor to the conversations about the sexual acts. She would talk very openly and candidly about everything else until you got to talking about vaginas and penises and those kinds of things. As we would expect, perhaps from a 13-year-old who is testifying in front of a judge that she has never met, those would be things that would be hard for her to talk about. I think overlaying all of this, and was made clear from her testimony, is that she felt at that time, and likely still does, some responsibility for this, which she should not. But because of that guilt, she did not go to her mother right away. She did not tell anybody in authority about what had happened because she felt she would get into trouble.

"The next thing you would talk about would be the quality of the testimony of the witness. By the quality, I mean, was she able to relate to the Court sufficient detail that what she described to you had happened to her really happened versus someone who was making it up and would lack those kind of details.

"There were many examples of those, but there is one I hope the Court picked up in particular. While she was sitting outside the campfire in the pitch dark [while the defendant was abusing her], the one thing she remembered—and this is where we have to imagine it being pitch black—was a sensory perception of the defendant playing with the necklace around her neck and the noise that it made while he did that, because that was kind of an out of body experience, so to speak, which is she can't see what's going on, but she can hear. This is an event that clearly happened. It is not something that could be made up by a 13-year-old."

Viewed in context, the two statements summarize the prosecutor's arguments from the evidence rather than expressing the prosecutor's personal opinion or resting on facts outside the evidence. The first statement, that, during her testimony, S "closed down in a very natural way that one would expect from a 13-year-old who had been sexually abused," summarized the prosecutor's argument that, despite S's reluctance to answer some of the questions posed

to her, her testimony was credible based on three premises drawn from the evidence and common knowledge: first, that it is "challenging" for a 13-year-old to come into court to testify against someone she trusted and who betrayed her trust; second, that it is difficult for someone that age to discuss intimate anatomy and sexual acts in front of a judge; and, third, that S felt that she was partly responsible for the abuse.[4] Those arguments are based on the specific facts of the case, as well as a very general understanding of what it is like to be a teenager, which any trier of fact could be expected to have. *See, e.g.*, *Dodge v. Tradewell Stores*, 256 Or 514, 516, 474 P2d 745 (1970) ("The jury is entitled to draw inferences from matters of common knowledge."). Based on those arguments, the prosecutor urged the court to conclude that S's testimony was credible. In context, then, the first statement was not improper.

The second statement, "[t]his is an event that clearly happened. It is not something that could be made up by a 13-year-old" is also a summary, this time of the argument that preceded it. The prosecutor explicitly articulated the factors that the court should use in assessing S's credibility; one of them was the quality of the testimony, that is, whether it included sufficient detail to persuade the court that it recounted events that had really happened. In support of the conclusion that S had testified to details that made her testimony persuasive, the prosecutor contended that S's testimony regarding a particular memory—the sound a necklace made—supported the conclusion that her testimony was credible. The prosecutor argued that the detailed quality of the memory was supported by the fact that it had been dark, so S would have been more likely to remember sounds. In summation of that argument—that the court should find S's testimony persuasive because it included detail that was consistent with all of the circumstances—the prosecutor argued that the detail in S's testimony indicated that the incident of abuse had clearly happened and that S could not have made it up.

Viewed in that context, the comment did not rely on the prosecutor's own opinion or on facts outside the

---

[4] S was 15 at the time of trial, but the abuse occurred when she was 13.

record—the prosecutor did not ask the court to take his word for it. Instead, he urged the court to find his argument—which was based on the details of the evidence—persuasive. At some point, the phrasing of a comment may make it impermissible regardless of whether it is an attempt to summarize a reasoned argument from the evidence. However, even if this comment approaches that line, we conclude that, in context, it was not improper.

Because the prosecutor's comments did not rely on the prosecutor's own opinion or facts outside the record, the post-conviction court erred in concluding that all reasonable trial counsel would have objected to them. Accordingly, petitioner failed to prove that counsel's performance was deficient.

Reversed and remanded as to fourth and fifth specifications; otherwise affirmed.