Argued and submitted October 28, 2019; in case numbers 15CR56120 and 15CR55011, reversed and remanded February 10, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NIKOLAY AVDEYEV,
*Defendant-Appellant.*

Marion County Circuit Court
15CR56120, 15CR55011;
A165643 (Control), A165647

482 P3d 115

In this consolidated case, defendant appeals from judgments of conviction for multiple counts of rape and sexual abuse against three complaining witnesses. On all but two counts—which were two sexual abuse counts against one of the complaining witnesses—the jury returned a nonunanimous verdict. The state concedes that defendant is entitled to reversal on the nonunanimous convictions under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). Defendant also argues that the two convictions by unanimous verdict should be reversed based on several arguments. In particular, he argues that the trial court erred in denying his pretrial motion to prevent the prosecutor or witnesses from referring to the complaining witnesses as "victims." *Held*: State concession is accepted, and the convictions based on nonunanimous verdicts are reversed under *Ramos*. As for the remaining two convictions by unanimous verdict, the trial court erred when it denied defendant's motion with respect to witnesses referring to complaining witnesses as "victims," because allowing such references is impermissible vouching. That error was not harmless with respect to those two convictions.

In case numbers 15CR56120 and 15CR55011, reversed and remanded.

Donald D. Abar, Judge.

Jason E. Thompson argued the cause for appellant. Also on the brief was Ferder Casebeer French Thompson & Stern, LLP.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

In case numbers 15CR56120 and 15CR55011, reversed and remanded.

**ORTEGA, P. J.**

In this consolidated case, defendant appeals from a judgment of conviction in case number 15CR56120 for first-degree rape and from a judgment of conviction in case number 15CR55011 for one count of first-degree rape (Count 1), one count of second-degree rape (Count 5),[1] 11 counts of first-degree sexual abuse (Counts 9 to 18, and 20), and one count of second-degree unlawful sexual penetration (Count 19).[2] On all but two counts—Counts 9 and 11 in case number 15CR55011—the jury returned a nonunanimous verdict. On appeal, defendant argues that the trial court erred in giving a nonunanimous jury instruction and that all of his convictions should be reversed as a result. The state concedes that defendant is entitled to reversal on the nonunanimous counts under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We agree, accept the concession, and reverse and remand the convictions that are based on nonunanimous verdicts. As for the remaining two convictions by unanimous verdict, we conclude that any error in giving the nonunanimous jury instruction was harmless as to those two convictions. *State v. Flores Ramos*, 367 Or 292, 478 P3d 515 (2020).

Defendant asserts several additional assignments of error on appeal that apply to the two remaining convictions. In his seventh assignment of error, defendant challenges the trial court's denial of his pretrial motion to prevent the prosecutor or witnesses from referring to the complaining witnesses as "victims." Based on the Supreme Court's decision in *State v. Sperou*, 365 Or 121, 442 P3d 581 (2019), we conclude that the court erred when it denied defendant's motion with respect to witnesses, because allowing such references is impermissible vouching. We further conclude that the error in this case was not harmless with respect to Counts 9 and 11 and, as a result, we also reverse

---

[1] By nonunanimous verdict, the jury also found defendant guilty of one count of second-degree rape (Count 6), which the court merged with the guilty verdict on Count 1, resulting in a single conviction for first-degree rape.

[2] The jury, by nonunanimous vote, also found defendant guilty of Counts 2 and 7. The trial court later acquitted defendant of those counts on defendant's post-verdict motion, because there was insufficient evidence at trial to support those charges.

and remand those remaining two convictions. That disposition obviates the need for us to address any of defendant's remaining assignments of error.

The background facts relevant to our disposition are undisputed. In 2015, defendant was charged with one count of rape of his wife that occurred in 2009 (case number 15CR56120), and with multiple counts of rape and sexual abuse of his niece SD that occurred between 1999 and 2002, and one count of sexual abuse of his niece IG that occurred between 2000 and 2001 (case number 15CR55011). At the time of the alleged conduct both SD and IG were under 14 years old, but at the time the charges were brought, they were both adults. There was no physical evidence to corroborate the charged crimes. Defendant did make statements to police that he had touched SD's breasts, but he asserted that it happened only because SD would come up to him and press her body against him or take his hand and put it on her. Defendant denied any other physical touching and denied any wrongdoing. As to one count of sexual abuse of SD (Count 12), a witness testified that she saw the touching, but there were no corroborating witnesses as to Counts 9 or 11, or any other charged count.

Defendant's defense theory at trial was that, when he and his wife filed for divorce and began fighting over custody of their minor daughter, members of their extended family supported either him or his wife. He asserted that his wife and nieces were making false accusations or, in the case of his nieces, were manipulated to make historically inaccurate accusations against him to assist his wife in the divorce proceedings. To support that theory, defendant argued that the testimony of the complaining witnesses was unreliable and pointed out inconsistencies in that testimony. Defendant's theory further relied on the outcome-determinative nature of the investigation conducted by the police, including that one of the detectives in the case, Avetisyan, was related by marriage to defendant's wife's family.

Before trial, defendant brought motions to prohibit the prosecutor and witnesses from referring to the complaining witnesses as "victim" or referring to their

statements as "disclosures." He argued that any such references would, under the circumstances of the case, undermine the presumption of innocence for defendant and constitute improper vouching for the credibility of his accusers. The state responded that, because the state is seeking to prove that defendant victimized the complaining witnesses, it should be allowed to call those witnesses a victim at trial. The trial court denied defendant's motion, ordering that "the state may use the words 'victim' and 'disclosure' during opening and closing statements" and further "reserve[d] it's ruling on the use of the word 'victim' by witnesses during trial."

With respect to referring to complaining witnesses as "victims" at trial, the prosecutor made multiple such references in closing argument. There were also several instances when a complaining witness was referred to as a victim during witness testimony—either by the prosecutor in her question put to the witness or by the witness themself. We discuss those instances more particularly in our prejudice analysis.

Because, as explained above, we reverse and remand all of defendant's convictions except Counts 9 and 11 under *Ramos*, we discuss defendant's other assignment of error only as it relates to Counts 9 and 11.

On appeal, among other things, defendant assigns error to the trial court's denial of his pretrial motion to prohibit the prosecutor and witnesses from referring to the complaining witnesses as "victims" at trial. Our resolution of that assignment is controlled by the Supreme Court's decision in *Sperou*. In that case, the defendant was charged with unlawful sexual penetration of SC. SC was expected to testify at trial, as well as other witnesses who would also testify to having been sexually abused by the defendant. The defendant denied all wrongdoing, asserting that the accusations were lies or false memories. Before trial, the defendant brought a motion to prohibit the prosecutor or witnesses from referring to those complaining witnesses as victims. The trial court denied the motion, and the prosecutor referred to those witnesses as victims throughout trial, and two investigating detectives and another witness also

referred to the complaining witnesses as victims in their testimony. *Sperou*, 365 Or at 125-27.

In addressing the use of "victim" at trial to describe a complaining witness, the court stated:

> "In short, we agree with defendant that, under our reasoning in [*State v.* ]*Lupoli*, [348 Or 346, 234 P3d 117 (2010), ]the use of the term 'victim' to refer to the complaining witness or other witnesses, in circumstances where the accusers' own testimony is the only evidence that the alleged criminal conduct occurred, conveys the speaker's belief that the accusers are credible."

*Sperou*, 365 Or at 132. The court further stated:

> "We also agree with defendant's contention that, where a defendant denies that any crime occurred, references to the complaining witness as a 'victim' may undermine the presumption of defendant's innocence because it assumes defendant's guilt, a fact that is necessarily not proved until the jury finds the defendant guilty."

*Id.* at 133.

In applying those conclusions, the court drew a distinction between the prosecutor referring to a complaining witness as a victim and a witness doing so. And, when, as here, the defendant brings up the issue in a pretrial motion to prohibit all such references, the court concluded that, "[i]n light of a prosecutor's dual responsibilities to refrain from inflammatory remarks and personal commentary, on the one hand, but to be an advocate for the state's cause, on the other, it is difficult to state a categorical rule regarding a prosecutor's use of the term 'victim' to describe a complaining witness where victimhood is disputed." *Id.* at 135. As such, the propriety of a prosecutor's use of the term "victim" necessarily depends on the context, and if, in context, the comment is inappropriate, the trial court has discretion to fashion an appropriate remedy, "subject to the defendant's right to a fair trial." *Id.* at 136. In *Sperou*, because the defendant's pretrial motion did not attempt to distinguish between appropriate and inappropriate prosecutorial references to "victim," the court concluded that the trial court acted within its discretion to deny the defendant's pretrial motion with respect to the prosecutor.

The court came to a different conclusion with regard to witnesses "where the factual question of an accuser's victimhood turns on the credibility of that accuser's claims." *Id.* at 138-39. In those circumstances, use of the word "victim" by a witness amounts to vouching and is categorically inadmissible. *Id.* at 139. Thus, the court concluded that it was legal error for the trial court to permit that testimony, and, because it was apparent that it was error at the time of the pretrial motion, the defendant was not required to renew his objection to witness vouching during trial. *Id.*

Applying *Sperou* to this case, we conclude that the trial court did not err when it ruled that "the state may use the words 'victim' and 'disclosure' during opening and closing statements." However, it was error for the trial court to deny defendant's pretrial motion with respect to witnesses' use of the word "victim" to refer to complaining witnesses. Although the trial court nominally reserved its ruling as to witness testimony, because it was equally apparent at the pretrial stage as it would have been during trial that witness use of "victim" to refer to the complaining witness would be impermissible vouching, the trial court committed legal error when it failed to grant defendant's motion as to witnesses.

To determine if that error warrants reversal, we must determine whether that error had more than a little likelihood to affect the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In making that assessment, we consider the nature of the evidence in the context of the trial as a whole. *Id.* at 33-34. Generally, witness vouching is prejudicial. *See Sperou*, 365 Or at 140 ("In general, witness vouching in Oregon is considered prejudicial, so much so in fact that it sometimes requires intervention by the trial court even when parties fail to object to it."). *But see State v. McConnell*, 308 Or App 29, 36, 479 P3d 1082 (2020) (one witness's one-time use of "victim" to describe a complaining witness was harmless in a bench trial because it was a single statement, it was minor in the context of the whole trial, and the trial court did not rely on it in making its speaking credibility assessment). In the circumstances of this case, we do not depart from that general path.

Defendant argues that the trial court's error in denying his pretrial motion was prejudicial, because it led investigating police officers to implicitly refer to SD as a victim, signaling to the jury that those officers believed SD. Defendant further argues that we should consider the prosecutor's pervasive use of the word "victim" in closing argument as part of our prejudice analysis, because that use was premised on the use of "victim" during the witness examinations.

The state responds that the witnesses' use of the word "victim" in this case is harmless, because it occurred only five times during a lengthy trial with 30 witnesses. In arguing there were only five instances, the state asserts that we can only consider those times that the word "victim" was said by a witness to directly refer to one of the complaining witnesses—that is, the state argues that we must ignore any of the times the prosecutor used the word "victim" when putting a question to the witness, because, under *Sperou*, it is not categorical error for a prosecutor to refer to a complaining witness as a "victim." Rather, the state urges that, under *Sperou*, defendant was required to separately object anytime the prosecutor used the word "victim," which defendant did not do in this case. The state argues that, in the context of the whole trial, the isolated instances of a witness saying the word "victim" had little likelihood of affecting the verdict.

We first reject the state's suggestion that we should not consider what the prosecutor said in its questioning to determine if the error here is harmful. The context of the questions here is important because it informs whether the premise of the question—the complaining witness's victimhood—is adopted and asserted by the witness in their answer as their own reference. For example, it would be absurd to suggest that the answer "yes" to the question "Is SD a victim of defendant?" would not be witness vouching under *Sperou*. That must be so, because the general rule is that witness vouching is prohibited whether the vouching opinion is express or implied in the witness's testimony; that is, the rule "prohibits a witness from making a direct comment, *or one that is tantamount to a direct comment*, on another witness's credibility." *State v. Black*, 364 Or 579,

585, 437 P3d 1121 (2019) (emphasis added); *see also State v. Brand*, 301 Or App 59, 66-67, 455 P3d 960 (2019), *rev den*, 366 Or 259 (2020) (a police officer's testimony that a witness delayed reporting because she was under fear of continued assaults constituted impermissible vouching because it signaled to the jury that he believed the witness's account). Moreover, to hold otherwise would allow the holding in *Sperou* to be easily side-stepped through careful questioning that would keep the word "victim" out of the mouth of the state's witness but would nonetheless have the very vouching affect by a witness that *Sperou* held is categorical error. As the court in *Sperou* noted:

> "Counsel's latitude in making comments *during* questioning, on the other hand, is narrower, given that counsel's job at that time is to present evidence in anticipation of summation. The state, in arguing generally that reference to a defendant's accusers as 'victims' falls within the scope of legitimate advocacy, does not explain why such a reference would be justified during questioning."

365 Or at 136 n 4 (emphasis in original). As a result, we also consider the instances in which the prosecutor referred to the "victim" in questioning.

Here, the impermissible witness vouching through the use of the word "victim" occurred largely during the testimony of Nelson, one of the lead investigating officers. There was also a reference by another officer, Simons, and an instance when SD referred to other witnesses in the case as "victims."

We start by describing the testimony of the investigating officers, beginning with Nelson. During that testimony, the prosecutor and Nelson had exchanges emphasizing that Nelson was investigating whether SD was a "victim":

> "A.   This was on November 5th of 2015. I advised [SD] that we had received a complaint alleging that she was possibly a victim in a case and that I would like to speak with her.
>
> "Q.   At that time, did you give her the name of [defendant]?

"A.   I don't believe I did at that time. And I don't think I even advised her, at that time, who the original complainant was.

"Q.   You mentioned just that she was a victim?

"A.   Correct.

"Q.   Did you tell her what type; a victim of what type of crime?

"A.   I don't believe I did at that time."

That theme was repeated with an exchange about Nelson contacting IG:

"Q.   And do you remember what you said to [IG] when you contacted her?

"A.   Yes. I contacted her and explained to her that I was investigating a case involving her sister being a victim of sex abuse, and then I proceeded to ask her some questions."

Those instances constitute impermissible vouching, because the repeated use of "victim" in questioning communicated that Nelson believed SD to be a victim of a crime, and not merely his intention to *determine* if that was so.

The prosecutor also asked, and Nelson testified, about his experience interviewing "victims" in the context of his interview of SD:

"Q.   And so Lieutenant Nelson, have you received training on best practices for interviewing victims of suspected abuse?

"A.   Yes.

"Q.   And did your interview with [SD] follow the best practices?

"A.   Yes."

That topic was revisited in Nelson's testimony with regard to his initial interview of SD:

"THE WITNESS:   My purpose was just to get a general idea of what [SD] recalled at that time.

"BY [THE PROSECUTOR]:   (Continuing)

"Q.   And is that consistent with your training and experience on interviewing victims of child sex abuse?

"A.   Yes; really interviewing any victim in any particular case, even a witness. Many times their information is somewhat limited when they first provide a statement, and then over time, as they refresh that incident in their mind, they recall things later on.

"And then typically it's been my experience that either witnesses or victims will notify me after the initial interview and provide more information about something.

"Q.   And Lieutenant Nelson, are you familiar with the term 'trauma informed' interviews?

"A.   Not necessarily.

"Q.   Okay.

"A.   Can you refresh my memory or explain?

"Q.   Are you familiar with the concept of interviewing victims of crimes and trying not to pin them down on details?

"A.   Yes.

"Q.   Okay. And have you received any training on the trauma that the brain goes through regarding victims of all types of abuse?

"A.   I have had training before in that.

"* * * * *

"Q.   And at the end of your interview, or towards the end of your interview, did you ask [SD] if she was aware of any other victims?

"A.   Yes.

"Q.   And did she—do you recall, did she tell you that she was not aware of any other victims?

"A.   That is correct; she was not aware of any other victims at the time."

That testimony constitutes impermissible vouching because, again, the use of "victim" and "victims" in the questioning communicated that Nelson believed that SD was a victim of defendant.

Another police detective, Simons, who had inter-
viewed SD in Lane County, stated the following on ques-
tioning by the prosecutor:

"Q. Did [SD] indicate that she was fearful of
[defendant]?

"A. Yes.

"Q. And based on your training and experience in
investigating child abuse investigations, is that a common
theme with child victims?

"A. Yes, it is."

That type of testimony is impermissible vouching because it
directly communicated that Simons believed SD was fearful
because she was a victim of sex abuse. *See Brand*, 301 Or
App at 66-67 (police officer's testimony that witness delayed
reporting because she was under fear of continued assaults
constituted impermissible vouching because it signaled to
the jury that he believed the witness's account).

Finally, in an exchange between the prosecutor and
SD, SD referred to the other "victims" of defendant:

"Q. And was it finding out that there—that your sister
and that there were concerns about other family members,
did that motivate you in agreeing to talk to the police?

"A. Yes. I wanted to speak out to all the victims and to
support them."

In the context of vouching testimony, we have found
such vouching to be harmful when the case, in large part,
is about the complaining witness's credibility. This is par-
ticularly true when the vouching is done by a police officer,
because such testimony can be couched in terms of the offi-
cer's expertise in interviewing victims and suspects. *See
State v. Lowell*, 249 Or App 364, 370, 277 P3d 588, *rev den*,
352 Or 378 (2012) (officer testimony that the defendant was
untruthful was not harmless where the case boiled down to
credibility and the officer's testimony was couched in terms
of his expertise in identifying truthfulness). Admitting
impermissible vouching also typically will be harmful when
it goes to a central factual issue in the case or rebuts a key
part of the defendant's trial strategy. *See Sperou*, 365 Or at

141 (an investigating officer's use of "victim" was prejudicial because it rebutted a key part of the defendant's trial strategy).

Here, whether or not SD was a victim and whether her account of her victimhood was credible were central to the state's case and key to defendant's trial strategy. In particular, Nelson's testimony, in which the prosecutor and Nelson had several exchanges that emphasized Nelson's belief that SD was a "victim" from the beginning of his investigation, and that he had expertise in interviewing such sex abuse victims, created a significant risk that the jury would rely on Nelson's belief, rather than its own assessment of credibility. This was a close case with the vast majority of the counts involving SD resulting in a nonunanimous verdict (Counts 1, 2, 5, 7, and 9 to 19), with two of those counts resulting in a post-verdict acquittal by the court for insufficient evidence (Counts 2 and 7). Under those circumstances, the witnesses' references to SD as a "victim," particularly the references in Nelson's testimony, was not harmless with respect to Counts 9 and 11. Because we conclude that the trial court's error was not harmless based on the witness testimony, we do not address defendant's argument that we should also take into account the prosecutor's closing argument in our analysis. Accordingly, we also reverse and remand the unanimous jury convictions, Counts 9 and 11, in case number 15CR55011.

In case numbers 15CR56120 and 15CR55011, reversed and remanded.