722 October 30, 2024 No. 765

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW N. KEHOE,
aka Matthew Nicholas Kehoe,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR15496; A179616

Christopher A. Ramras, Judge.

Submitted September 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kate E. Morrow, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

A jury found defendant guilty of fourth-degree assault, ORS 163.160. At trial, there was no dispute that defendant struck the complaining witness, but defendant argued that he did so in self-defense. On appeal, in two assignments of error, defendant argues that the trial court plainly erred in failing to intervene when both the arresting officer and the prosecutor repeatedly referred to the complaining witness, T, as a victim. We conclude that the trial court did not plainly err. When considered in context, neither the officer nor the prosecutor engaged in unambiguous vouching. Their uses of the term "victim" to describe the complaining witness occurred in the context of explaining that there was physical evidence and other witnesses to corroborate the complaining witness's account of what occurred. And even if some of the police officer's statements could be construed as vouching for the complaining witness's credibility, we decline to exercise our discretion to correct the errors, if any, because the jury was instructed about vouching and, if defendant had objected, then the trial court could have easily corrected any misimpression created by use of the term "victim." We therefore affirm.

We briefly summarize the relevant facts. Defendant, T, and T's cousin lived in separate units in the same apartment complex in Portland. In March 2022, T, his cousin, and some others were tie-dying t-shirts outside the apartment complex. Defendant came out of his apartment, complaining about cigarette smoke. Defendant yelled at T and the others. Defendant asked, "Where's your piece?" T and his cousin interpreted the phrase as a reference to a gun. Defendant claimed he was referring to Buddhist practices, and to a book that T had given him, called "Being Peace."

Based on what he perceived as defendant's threatening behavior, T called the police. While on the call, defendant reached for T's phone, and T told defendant to "[g]et away from me." Defendant struck T in the face with his hand. On the recording of the call, T can be heard shouting, "He just hit me!" and defendant shouts, "You head-butted me." When the police arrived, Officer McDonald noticed "some redness along [T's] brow." The police took a photograph of the injury.

McDonald spoke with defendant, who initially insisted that the altercation was merely verbal. McDonald did not observe that defendant had any injuries. After speaking with witnesses, she arrested defendant for assault. While transporting defendant to jail, defendant told McDonald that T had head-butted him and that he had slapped T in self-defense.

The state charged defendant with one count of fourth-degree assault. At defendant's jury trial, the state called a number of witnesses, including T, his cousin, and McDonald. The jury listened to the audio recording of the 9-1-1 call and viewed photographs of T's injury, which showed redness or bruising around his left eye. After the state rested, defendant and his wife took the stand. Defendant testified that he wanted to confront T about an earlier incident that occurred at the apartment complex, but T ignored him. Defendant followed T around the corner of the building, where T and the others began laughing at defendant and "instigating" him. When T called the police, defendant wanted T to give him the phone. Defendant and his wife testified that T lunged at defendant and attempted to head-butt him, and that defendant acted in self-defense. Although defendant had told the police officer that T had head-butted him, defendant testified at trial that T merely attempted to do so.

The jury found defendant guilty. On appeal, defendant argues that McDonald and the prosecutor engaged in impermissible vouching when they repeatedly referred to T as a "victim." At trial, defendant did not object, and because he did not preserve his argument, he requests plain-error review on appeal. An error is plain when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If the trial court plainly erred, it is a matter of discretion whether we will correct it. *State v. Gornick*, 340 Or 160, 166-67, 130 P3d 780 (2006).

"Vouching refers to the expression of one's personal opinion about the credibility of a witness." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019). "In Oregon, witnesses are categorically prohibited from giving vouching

testimony." *Id*. Vouching is prohibited because it creates "a risk that jurors would rely on witnesses' opinions about the credibility of an alleged victim to avoid their independent obligation to determine whether the complainant's allegations were truthful." *State v. Corkill*, 262 Or App 543, 553, 325 P3d 796, *rev den*, 355 Or 751 (2014). "Whether a witness's statement constitutes impermissible vouching is a legal question." *Sperou*, 365 Or at 128.

> "When faced with an unpreserved claim of error regarding vouching, our first task is to assess the challenged testimony to determine whether the witness unambiguously vouched, may or may not have vouched (ambiguous), or unambiguously did not vouch. If a witness unambiguously vouched, it is plain error not to have stricken the testimony, even absent an objection."

*State v. Murphy*, 319 Or App 330, 335, 510 P3d 269 (2022).

        In *Sperou*, the Supreme Court drew a distinction between use of the term "victim" by prosecutors and witnesses, explaining that prosecutors have wide latitude to make arguments from the evidence, but that a witness's description of the complaining witness as a "victim" conveys an opinion that the complaining witness is telling the truth. *Id.* at 130-37; *see also State v. McConnell*, 308 Or App 29, 34-36, 479 P3d 1082 (2020) (emphasizing the difference between the prosecutor's and a witness's use of the term "victim"). However, the Supreme Court also observed that a witness's use of the word "victim" may not raise vouching concerns "in a case where there is physical evidence corroborating the complaining witness's claims of victimhood," because, in that circumstance, the description of the complaining witness as a "victim" may be based on evidence other than the complaining witness's allegations. *Sperou*, 365 Or at 131. To date, no case has held that it was plain error for the trial court not to strike references to the complaining witness as a "victim" in circumstances where there is physical evidence or other witnesses corroborating the complaining witness's account of what occurred.

        With that framework in mind, we consider the challenged statements. At trial, during direct examination,

McDonald referred to T as a "victim" six times. McDonald testified:

> "I responded to the location, I called the complainant, the *victim*, to get more information before my arrival, and then responded to that location and started interviewing witnesses.
>
> "* * * * *
>
> "When I arrived, I saw the *victim*, I spoke with him, saw some redness on his face and inquired about what had occurred, and started to talk with him.
>
> "* * * * *
>
> "My understanding was that [defendant] had punched the *victim* in the face after an argument in front of their apartment building.
>
> "* * * * *
>
> "I placed [defendant] under arrest. I believed I had probable cause for Assault IV after interviewing the *victim* and a couple [of] witnesses.
>
> "* * * * *
>
> "As I was transferring [defendant] to jail, he stated that the event where he slapped the *victim* was in self-defense. He stated that he was head-butted prior to slapping the *victim*."

(Emphases added.)

Because vouching by a witness is categorically prohibited, McDonald's references to T as a "victim" are troubling. When the witness is a police officer, use of the term "victim" is even more concerning, because it may signal to the jury that a person with expertise in identifying victims believes the complaining witness. *See State v. Avdeyev*, 309 Or App 205, 216, 482 P3d 115 (2021) (holding that the trial court erred when it denied defendant's pretrial motion to prevent witnesses, including investigating officers, from referring to complaining witnesses as "victims"). Typically, then, defendants should object, and trial judges should be prepared to intervene whenever a witness, but especially when a police officer or an expert witness, refers to a complaining witness as a "victim."

Nevertheless, a police officer's description of the complaining witness as a "victim" is less likely to mislead the jury where there is physical evidence of a crime, and when the officer is not relying solely on the complaining witness's allegations. *See Sperou*, 365 Or at 131-32 (use of the word "victim" may not be problematic where the testimony is "based on evidence other than the complaining witness's allegations"). Here, considering the context of McDonald's testimony, her first four descriptions of T as a "victim" suggest that she was relying at least in part on her interviews of other witnesses and her observation of T's injury. And her fifth and sixth uses of the term "victim" occurred in the context of describing how defendant told her that he acted in self-defense. Furthermore, in deciding whether a crime occurred, the jury listened to an audio recording of the altercation, which tended to corroborate the complaining witness's account of what occurred. Thus, unlike in *Avdeyev*, 309 Or App at 208, where there was no physical evidence to corroborate the charged crimes, here there was both physical evidence and other witnesses to corroborate the complaining witness's account of what occurred.

Based on that context, we conclude that the police officer may or may not have vouched for the complaining witness's credibility, but her testimony did not consist of unambiguous vouching. Accordingly, the trial court did not plainly err in failing to *sue sponte* strike McDonald's references to the complaining witness as a victim. *See Murphy*, 319 Or App at 335 ("[I]f a witness's testimony was ambiguous—such that the witness may or may not have been vouching—there is no plain error in not having stricken the testimony *sua sponte*, in part because the lack of objection prevented clarification of the testimony.").[1]

---

[1] Admittedly, the line between unambiguous vouching and ambiguous vouching is a fine one. In a post-conviction case, *Curry v. Highberger*, 326 Or App 259, 531 P3d 702, *rev den*, 371 Or 511 (2023), we addressed facts similar to those at issue here, albeit in a different procedural posture. As explained in the concurring opinion, "two adult men had a physical altercation, and the one charged with a crime claimed that he had acted in self-defense. In that context, referring to the complainant as 'the victim' necessarily cast him as the victim of a crime committed by [the] defendant, counter to [the] defendant's theory that no crime occurred ***." *Id.* at 272 (Aoyagi, J, concurring). But here, there was also an audio recording of the 9-1-1 call, which tended to corroborate the complaining witness's version of events. When that evidence is considered alongside the fact that only the complaining witness was injured,

Next, we consider the prosecutor's statements. During the state's closing argument, the prosecutor referred to T as a "victim" five times. The prosecutor stated:

"So, what are the allegations in this case? That the [d]efendant * * * caused physical injury to the *victim*, [T].

"* * * * *

"On March 27th, 2022, [d]efendant * * * saw the *victim*, [T], walking outside, decided he was going to confront him, confront him about an incident that happened a week earlier.

"* * * * *

"[Defendant is] getting furious, he's upset, right? First he's ignored, and now he's laughed at. He will not let this stand, he's furious. So he starts talking—turns his aggression to the *victim*, [T].

"* * * * *

"But throughout that phone call you hear for about the next 15, 20 seconds, [T] consistently saying, 'Step away from me. I'm trying to separate myself like the officer says.' You can hear in the background the defendant * * * also talking. Right? All of a sudden you hear the *victim* say, 'He's coming at me again. He's coming at me again.'

"* * * * *

"So, again, the elements of the case. On March 27th, 2022, [d]efendant * * * caused physical injury to the *victim*, [T], right?"

(Emphases added).

The prosecutor's use of the term "victim" is less troubling in this instance than the police officer's use of the term. "'[I]t is permissible for a prosecutor to argue that the jury should infer that a witness is credible based on the evidence in the record, so long as the prosecutor does not vouch for the witness by interjecting his or her personal opinion of the witness's credibility.'" *Behrle v. Taylor*, 307 Or App 126,

---

and the information provided by other witnesses, we conclude that McDonald may or may not have vouched for the complaining witness's credibility, but that any vouching was not unambiguous. In any event, as we explain below, even if there was plain error, we would not exercise our discretion to correct the error.

137, 476 P3d 475 (2020), *rev den*, 367 Or 709 (2021) (quoting *Heroff v. Coursey*, 280 Or App 177, 194, 380 P3d 1032 (2016), *rev den*, 360 Or 851 (2017)). Prosecutors cross the line from acceptable arguments about witness credibility to impermissible vouching when their arguments are "in the nature of 'take my word for it,' not 'let me show you.'" *Davis v. Cain*, 304 Or App 356, 364, 467 P3d 816 (2020). In *Sperou*, the Supreme Court pointed out that if a prosecutor were to argue that "'we will prove that [the] defendant committed this crime and that [the witness] was his victim,'" then that statement would be a fair comment on the evidence. 365 Or at 135-36. Here, the prosecutor's first and fifth uses of the term "victim" fall neatly into that category because, in those instances, the prosecutor was describing the allegations or the elements of the charge against defendant.

The prosecutor's second, third, and fourth use of the term "victim" did not consist of vouching because, in those instances, the prosecutor referred to and relied on the evidence in the record to try to persuade the jury regarding the state's view of the evidence. Defendant himself testified that he sought to confront T about a prior incident at the apartment complex and that he became more agitated when T and his associates began laughing at him. The audio recording of T's telephone call to the police supported T's account of what occurred. Thus, when describing the complaining witness as a "victim," the prosecutor was not asking the jury to take the prosecutor's word for it; instead, the prosecutor's descriptions relied on evidence in the record. We conclude that the prosecutor did not engage in vouching, and the trial court did not plainly err in failing to strike those parts of the prosecutor's closing argument. *See McConnell*, 308 Or App at 33-35 (determining that the trial court did not err in denying a pretrial motion to prohibit the prosecutor's use of the word "victim" because the motion failed to appreciate the considerations distinguishing a prosecutor's legitimate use of the term from uses that are improper).

In the context of vouching testimony, when a case boils down to a credibility contest, use of the term "victim," and especially repeated use of the term, is considered prejudicial. *Sperou*, 365 Or at 140. This case, however, was not a

pure credibility contest. Instead, there was testimony from a witness who observed the incident, and the jury observed photographs of the injury and listened to an audio recording of the altercation. In addition, the jury was instructed on vouching, and we presume that jurors follow their instructions absent an overwhelming probability that they would have been unable to do so. *State v. Shinnick*, 288 Or App 847, 848-49, 407 P3d 877 (2017). As a result, even if we were to conclude that the trial court erred in failing to strike all uses of the term "victim," and that the error was harmful, in this context it was not a grave error because given the jury instruction on vouching, the error would have had a very low likelihood of affecting the verdict. *See State v. Horton*, 327 Or App 256, 266, 535 P3d 338 (2023) (declining to exercise discretion to correct a plain error where the likelihood that the verdict would have been different was extremely low). For those reasons, the ends of justice would not be served by reversing defendant's conviction based on use of the term "victim" to describe the complaining witness.

Affirmed.